Alice C. NELSON, Plaintiff,

v.

NATIONWIDE MORTGAGE
CORPORATION, et al.,
Defendants.

Civ. A. No. 84–54.

United States District Court,
District of Columbia.

April 16, 1987.

Leonard L. McCants, Tilman L. Gerald, Silver Spring, Md., for plaintiff.

Robert Rekaitis, Theodore A. Howard, Washington, D.C., for Boddie and Slocum.

Ronald L. Early, Bethesda, Md., for Family Federal Sav. & Loan Assn.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on a number of pending motions. At issue are defendant J. Michael Slocum's motion to dismiss the complaint and motion to dismiss the cross-claim of defendant Family Federal Savings & Loan Association (Family Federal), motions by plaintiff Alice C. Nelson and Family Federal for entry of default judgments against defendants Nationwide Mortgage Corporation (Nationwide), Norman C. Tillette, and Roland Butler, Nelson's objection to Magistrate Arthur L. Burnett's denial of class certification, summary judgment motions by Slocum and Family Federal, and Nelson's motion to amend her complaint.

### Background

In 1980, Alice Nelson, a resident of the District of Columbia, purchased a parcel of real estate located in Washington, D.C. (hereinafter referred to as 1210 G Street) with the intention of renovating the property and using it as a source of rental income. In an effort to obtain the funds necessary to renovate, Nelson sought, unsuccessfully, loans from a number of financial institutions. She also became acquainted with Roland Butler, a mortgage broker for Nationwide Mortgage Corporation, a Virginia corporation with its principal place of business in Virginia. According to Nelson, Butler assured her that through Nationwide she could obtain a 15% "business loan" for virtually any amount of money she needed. She claims that neither Butler, nor anyone from Nationwide with whom she later had contact, ever explained to her the significance of characterizing her loan as a "business loan." Nelson subsequently submitted a loan application to Nationwide.

Nelson alleges that after executing the loan application, Butler contacted her on several occasions during which he advised her that her loan would initially be structured as a one-year loan, with monthly payments of interest only and with the principal amount due at the end of twelve months. When Nelson expressed reservations about the short repayment period, Butler allegedly assured her that within three to four months of settlement the loan

would be refinanced, at no charge to her, to a long-term Federal Housing Administration (FHA) loan. Nelson paid Butler $40 for a credit check and $100 for an appraisal. The 1210 G Street property was appraised at $93,000.

Nelson also met Norman Tillette, Nationwide's president, at Nationwide's offices in Virginia. She alleges that Tillette reiterated Butler's promises that she would obtain a short-term business loan that later would be converted into a long-term loan. Nelson asserts that neither Tillette nor Butler inquired into her intended use of the loan proceeds. She also contends that Tillette encouraged her to submit the title to her personal residence for review, claiming that she could become rich borrowing from Nationwide.

In July of 1981, Butler notified Nelson that her loan had been approved and that she could receive the proceeds at Nationwide's offices. Butler drove Nelson to the loan settlement meeting. She claims that during the drive to Nationwide's offices, she asked Butler if she needed to have an attorney present, and was told that it would be unnecessary because there was "a settlement company" located next door to Nationwide. The settlement meeting took place at the law offices of Ruttenberg, Phelps and Slocum, where defendant J. Michael Slocum was a partner.

Nelson met Slocum for the first time at the settlement, which Butler and Tillette also attended. Nelson alleges that she was presented with a promissory note, a deed of trust, a "settlement statement," three affidavits regarding the business purpose of the loan, a Truth-in-Lending disclosure statement, and a "waiver of right of rescission" form, all for the first time. She claims that she was never told that she had a right to have an attorney present, and that Slocum "gave the impression" that he was acting "to represent the interests of all parties."

Nelson concedes that based on two years of secretarial training she recognized much of the terminology, but claims that she had no understanding of the forms' legal significance. She claims that Slocum moved through the terms of the loan very quickly, making no effort to explain their significance. Nelson alleges that she questioned the fact that although the amount borrowed was $72,800, $14,560 had been deducted from the proceeds as a "Discount to Nationwide," and another $5,096 had been deducted as a brokerage fee to Butler, leaving less than $52,000 in net proceeds. She claims that both Slocum and Butler reassured her that these charges were reasonable in light of the imminent long-term refinancing of the loan. According to Nelson, both Butler and Tillette had told her previously that refinancing would entail no additional charges. By her calculations, Nelson now estimates that the effect of the discount and brokerage fee, when added to the stated interest rate of 15%, was to impose an effective interest rate of over 40%.

Nelson also signed affidavits stating that the loan proceeds were to be used for business purposes. She claims that Slocum had her write, in her own handwriting, language that he had printed on a separate piece of paper. She further alleges that neither Slocum nor Butler ever attempted to determine the actual anticipated use of the funds. Nelson also completed a waiver of her right to rescission, claiming again that she wrote out what Slocum directed her to write. She claims that Slocum told her that signing the waiver, in which she attested to having "a bona fide immediate business financial emergency," would enable her to receive the funds immediately, rather than three days later. According to Nelson, Slocum did not explain the legal significance of waiving her right to rescission. Finally, plaintiff alleges that Slocum had her endorse an additional settlement form which included a deduction for an unpaid water bill that was not reflected on the primary settlement statement.

Shortly after the settlement, Family Federal, a Virginia savings and loan, formally acquired Nelson's loan from Nationwide. Nelson alleges that Family Federal acted as a "silent partner" in all of Nationwide's lending transactions, agreeing in advance to purchase Nationwide's loans upon execu-

tion. She claims that Nationwide lacked the funds to act as a lending institution, and therefore it relied on Family Federal to assume the loans immediately and provide the funds necessary for initial disbursement. According to Nelson, she was informed at the settlement that all interest payments should be made directly to Family Federal.

Nelson did not use the loan proceeds to improve the 1210 G Street property. Instead, she paid off a prior one-year loan, made additional investments, and improved other properties. Although Nelson claims that she repeatedly contacted Nationwide to inquire about the expected long-term refinancing of her loan, no such conversion ever occurred. Nevertheless, on December 10, 1981, Nelson borrowed again from Nationwide, this time to finance her purchase of a property in northeast Washington, D.C. (hereinafter referred to as 1209 F Street). This second loan was for $45,000.

The settlement for the second loan was, by Nelson's account, quite similar to the meeting for the first. Nelson executed a promissory note, deed of trust, settlement statement, and affidavits of business purpose. Unlike the first loan, the second loan included a $454 deduction for purchase of a one-year life insurance policy, but did not include a brokerage fee deduction.

Nelson continued to request long-term refinancing. She alleges that Tillette and Butler continued to stall, at first claiming that the delay was due to a backlog at the FHA, and later claiming that they needed copies of her two most recent income tax returns. Eventually, Tillette admitted that long-term refinancing was not available, but allegedly offered a three-year loan at 18% with monthly payments of interest only. Nelson apparently declined this offer, and also failed to arrange refinancing through another lender. She alleges that in order to avoid foreclosure, she was forced to sell the 1210 G Street property at a substantial loss. Nelson paid all twelve monthly payments on the second loan, and then made "extension fee payments" to Family Federal until November of 1983,

when she obtained refinancing from another institution.

Nelson commenced this lawsuit on January 6, 1984, naming Nationwide, Tillette, Butler, Slocum, and Family Federal as defendants. The complaint includes a count of fraud directed against all defendants, a claim under the District of Columbia Consumer Protection Procedures Act directed against Nationwide and Family Federal, and a legal malpractice claim directed against Slocum. Family Federal cross-claims against the other named defendants, alleging that Family Federal was fraudulently or negligently induced to acquire the Nelson loans, with no knowledge of the circumstances under which the loans were made.

Tillette and Butler are presently incarcerated. Both were convicted of federal fraud and conspiracy violations in a criminal prosecution arising from Nationwide's lending practices. Nationwide has ceased doing business. Tillette, Butler, and Nationwide have failed to respond to either the complaint or the cross-claim, and defaults against them have been entered by the Clerk of the Court. Thus, the only defendants actively participating in this matter are Slocum and Family Federal.

*Discussion*

I. *Motion To Amend*

■ Nelson moves to amend her complaint to add the necessary jurisdictional allegations with respect to Butler, to recharacterize her malpractice claim against Slocum as a negligence claim, and to add a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68. Slocum and Family Federal oppose the motion. However, under Fed.R.Civ.P. 15(a), a plaintiff may amend the complaint once "as a matter of course" before the defendant files a responsive pleading, and because Slocum's motion to dismiss does not constitute a responsive pleading, *e.g., Cooper v. Shumway,* 780 F.2d 27, 29 (10th Cir.1985), he lacks standing to oppose Nelson's motion to amend.

Family Federal has answered the complaint and therefore may oppose the motion to amend. Nevertheless, after considering Family Federal's opposition (incorporating by reference Slocum's opposition to the addition of a RICO claim) and the entire record in this matter, the Court concludes that the interests of justice would be furthered by allowing Nelson to amend her complaint. *See* Fed.R.Civ.P. 15(a). Defendants shall answer, move, or otherwise respond to the amended complaint within 20 days of the date of this Memorandum Opinion.

## II. *Motion for Entry of Default Judgments*

In light of Nelson's filing of an amended complaint, her motions for entry of default judgments against Nationwide, Tillette, and Butler must be denied as moot. Moreover, the Court notes that entry of a default judgment against less than all of a group of defendants allegedly jointly liable is generally inappropriate. *See* 10 C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2690 (1983).

Additionally, the Court finds that Family Federal's motion for entry of default judgments against Nationwide, Tillette, and Butler should be held in abeyance pending a decision on the merits of Nelson's complaint. While it is undisputed that cross-claimants may move for entry of a default judgment, *see* Fed.R.Civ.P. 55(d), the Court has the authority to conduct evidentiary hearings "to establish the truth of any averment...." Fed.R.Civ.P. 55(b)(2). In this case, Family Federal's factual allegations concerning its knowledge of the other defendants' allegedly fraudulent activities conflict with those of the plaintiff. Granting Family Federal's motion would be, therefore, equivalent to granting Family Federal summary judgment on Nelson's claims. Only a decision on the merits of the complaint can resolve this factual conflict. Accordingly, the Court will hold Family Federal's motion is abeyance pending a resolution on the merits, either through trial or by dispositive motion, of Nelson's claims against Family Federal.

## III. *Choice Of Law*

Both Slocum and Family Federal challenge Nelson's suggestion that District of Columbia law should be applied in this case, arguing that Virginia law is the proper choice. They point to the fact that at the time Nelson's loans were executed Nationwide and Family Federal were both Virginia corporations operating only in Virginia, that all of the relevant financial transactions occurred in Virginia, that Nelson's loan payments were to be delivered to Family Federal's offices in Virginia, and that Slocum practiced law exclusively in Virginia and met with Nelson only in Virginia. In response, Nelson argues that she is a District of Columbia resident, that the property mortgaged to secure each loan was located in the District of Columbia, and that the loan forms stated Nelson's loans were for business purposes, as defined by D.C.Code § 28-3301(d).

Although none of the parties addresses the choice of law issue on a claim-by-claim basis, each claim of the complaint presents a unique choice of law issue which must be resolved independently. *Godbey v. Frank E. Basil, Inc.*, 603 F.Supp. 775, 777 (D.D.C. 1985). In her amended complaint, Nelson advances four theories of recovery: fraud, negligence, violation of the District of Columbia's consumer protection statute, and violation of RICO. The RICO claim must be decided as a matter of federal law, but the remaining claims must be decided under either Virginia or District of Columbia law.

Because this Court's subject matter jurisdiction over these nonfederal claims is based on diversity of citizenship, the Court must apply the forum's choice of law rules. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Stancill v. Potomac Electric Power Co.*, 744 F.2d 861, 864 n. 16 (D.C.Cir.1984). The same is true if the Court's jurisdiction is characterized as pendent jurisdiction. *McSurely v. McClellan*, 753 F.2d 88, 110 (D.C.Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 525, 88

L.Ed.2d 457 (1985). Accordingly, the Court applies the choice of law rules utilized in the District of Columbia courts.

### A. *Fraud*

■ In resolving choice of law questions with regard to tort claims, the District of Columbia courts follow the governmental interest analysis adopted in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) (hereinafter referred to as the SECOND RESTATEMENT). *Godbey*, 603 F.Supp. at 777 n. 8; *see also Estrada v. Potomac Electric Power Co.*, 488 A.2d 1359, 1361 n. 2 (D.C.1985); *Myers v. Gaither*, 232 A.2d 577, 583 (D.C.1967). Under this approach, the strict rule of *lex loci delictus* ("place of the wrong") is abandoned in favor of a more flexible rule which considers the totality of the parties' contacts with the interested fora. *Myers*, 232 A.2d at 583; *see generally* SECOND RESTATEMENT § 145 (rights and liabilities determined by law of state with "most significant relationship").

With regard to fraud claims, if the plaintiff's action in reliance took place in the same state where the false representations were made, that state will provide the presumptive choice of law, subject to displacement if another state is shown to have a more significant relationship. SECOND RESTATEMENT § 148(1). Here, with the exception of some of Butler's conduct, all of the allegedly fraudulent conduct occurred in Virginia. Furthermore, Nelson's actions in reliance—the signing of the loan papers—also occurred in Virginia. Therefore, Virginia provides the presumptive choice of law. If additional contacts are considered, *see* SECOND RESTATEMENT § 148(2), the only factor weighing in favor of District of Columbia law is the fact that Nelson is domiciled there, and this is more than overcome by the fact that Nelson's performance under the contract—the periodic loan payments—was to occur in Virginia. The fact that the property securing the loan is located in the District of Columbia is irrelevant when, as here, the claim is based on the validity of the debt. *See* SECOND RESTATEMENT § 189 comment by; SECOND RESTATEMENT § 195 com-

ment a. Finally, the Court cannot find that the District of Columbia has a demonstrably greater interest in protecting its residents from fraud than Virginia has in preventing its resident corporations and lawyers from perpetrating such torts. Thus, Virginia law will apply to Nelson's fraud claim.

### B. *Negligence*

■ Nelson seeks to hold Slocum liable for negligent execution of his duties as the settlement attorney. In selecting the law to apply to Nelson's negligence claim, the Court again is guided by the SECOND RESTATEMENT. *Stancill*, 744 F.2d at 864 n. 16. In making this choice, the Court considers the site of the injury, the place where the negligent conduct occurred, the domicile of the parties, and the place where the parties' relationship "is centered." SECOND RESTATEMENT § 145(2). With the exception of Nelson's residence in the District of Columbia, every factor weighs in favor of Virginia. Thus, as with Nelson's fraud claim, the negligence claim must be tried under Virginia law.

### C. *Violation of the D.C. Consumer Protection Statute*

■ Although both the District of Columbia and Virginia have enacted consumer protection statutes, *see* D.C.Code §§ 28–3901 to 3908 (Supp.1986); Va.Code Ann. §§ 59.1–196 to 207 (1982), the Court need not engage in a conflicts analysis here because it finds that even if Nelson's factual allegations are taken as true, the District of Columbia statute does not reach the conduct involved in this case. It is undisputed that both Nationwide and Family Federal are Virginia corporations, and that the relevant transactions occurred in Virginia. Consequently, the District of Columbia statute would have to be given broad extraterritorial effect if it were to apply here. Nothing in the statute or interpretative case law indicates such a legislative intent, and absent such affirmative evidence the Court will not presume that the statute was intended to apply to every commercial transaction involving a District of

Columbia resident, wherever and with whomever that transaction occurs.[1]

In finding that the District of Columbia statute does not apply here, the Court grants Family Federal's motion for summary judgment, with respect to the Third Claim of the amended complaint. The Court will, however, grant Nelson leave to amend her complaint to state a claim under the appropriate Virginia statute.[2]

## IV. Motions To Dismiss

### A. Slocum's Motion To Dismiss the Complaint

■ Slocum moves to dismiss[3] on the grounds that the fraud claim is barred because Nelson did not rely on Slocum's representations and because Nelson has "unclean hands," and that the malpractice claim is barred because there was no attorney-client relationship between Nelson and Slocum.[4] With regard to the fraud claim, the Court finds that plaintiff has sufficiently alleged the elements of common law fraud, including detrimental reliance, and that it cannot be said that it is "beyond doubt that plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). Ac-

cordingly, she is entitled to an opportunity to prove that Slocum committed fraud.

■ Nelson's malpractice claim presents more difficulties.[5] Nelson alleges that Slocum failed to explain adequately her rights and the nature of the documents she was signing at the settlement conference. Slocum moves to dismiss on the premise that he owed no actionable duty to Nelson because she was not his client. Thus, the dispositive issue is whether Virginia law allows a malpractice claim against an attorney by a party not in contractual privity with the attorney.

The Supreme Court of Virginia examined the issue of an attorney's negligence liability to third parties in *Ayyildiz v. Kidd*, 220 Va. 1080, 266 S.E.2d 108 (1980), where the court refused to allow a successful defendant to sue the plaintiff's counsel for malicious prosecution. The court noted that "[a]bsent special circumstances," 266 S.E.2d at 112 (quoting *Brody v. Ruby*, 267 N.W.2d 902, 906 (Iowa 1978)), attorneys generally are liable only to their clients, and stated:

> While it is true that the attorney owes a general duty to the judicial system, it is not the type of duty which translates into liability for negligence to an opposing party where there is no foreseeable reliance by that party on the attorney's conduct.

1. In fact, the statutory language does not even restrict the class of potential plaintiffs to residents of the District of Columbia. Thus, if the Court were to give the statute extraterritorial effect, not only could the law be construed to reach all out-of-state transactions involving District of Columbia residents, but it could be construed to reach all consumer transactions involving parties over which this Court could exercise personal jurisdiction. Such a construction would raise serious constitutional questions that, in light of the Court's more narrow interpretation of the statute, need not be considered here.

2. As the Virginia consumer protection statute has not formally been raised, the Court expresses no opinion on its applicability to any of the defendants.

3. Prior to Nelson's motion for leave to file an amended complaint, Slocum moved to dismiss the complaint. While procedurally the motion to dismiss could now be deemed moot, substan-

tively the motion addresses elements of the complaint which are not significantly different in the amended complaint. Moreover, addressing the relevant issues at this stage will enable the parties to avoid the needless duplication of effort involved in relitigating certain issues in a motion to dismiss the amended complaint.

4. Slocum also moves to dismiss the statutory claim under the District of Columbia's Consumer Protection Procedures Act, D.C.Code §§ 28–3901–3908 (Supp.1986). The validity of that claim was considered above in the Court's choice of law analysis.

5. In her amended complaint, Nelson entitles this claim "Negligence," rather than "Legal Malpractice," as it was titled in the original complaint. However, the allegations which make up the claim in the amended complaint are identical to those included in the original complaint. In this day of notice pleading, the Court sees no reason to give substantive effect to the title of a cause of action.

266 S.E.2d at 112 (quoting *Bickel v. Mackie*, 447 F.Supp. 1376, 1381 (N.D.Iowa), *aff'd mem.*, 590 F.2d 341 (8th Cir.1978)). This case may present the sort of special circumstances in which a plaintiff can demonstrate that third-party reliance was both reasonable and foreseeable.

Nelson alleges that Slocum held himself out as "the" settlement attorney and purported to act on behalf of all parties. Under Virginia law, an attorney-client relationship may be created where an attorney gratuitously offers his services. *Glenn v. Haynes*, 192 Va. 574, 66 S.E.2d 509, 512 (1951) ("An attorney is not bound to undertake to render services for another without compensation and if he voluntarily engages to do so he is liable for the consequences of his improper management, and cannot allege as a defense lack of consideration for his services.")[6] Nelson adequately has alleged that Slocum volunteered to provide a legal explanation of the various documents involved in settlement of her loan, and that Slocum affirmatively responded to questions she raised during the course of the meeting. Unless Slocum can demonstrate that Nelson's reliance was unreasonable or unforeseeable under the circumstances, he can be held liable for negligence. The motion to dismiss is denied.

### B. *Slocum's Motion To Dismiss the Cross-Claim*

■ Slocum also moves to dismiss Family Federal's cross-claim against him. Family Federal alleges that codefendants Slocum, Tillette, and Nationwide knew or should have known that Nelson's loans were illegal, and that their failure to inform Family Federal of the loans' true purpose was either fraudulent or negligent. Slocum moves to dismiss, claiming that to the extent the cross-claim is premised on fraud, the necessary elements have not been alleged with sufficient particularity, and that to the extent the cross-claim is premised on negligence, there was no attorney-client relationship with Family Federal upon which to base a cause of action.

Family Federal's cross-claim asserts that the "codefendants" fraudulently misrepresented the validity of the loan documents offered for sale to Family Federal. In response to Slocum's argument that Family Federal has failed to allege a single representation on his part, fraudulent or otherwise, Family Federal weakly responds that whether Slocum ever made any representations is a question of fact and therefore irrelevant for the purposes of a motion to dismiss. The Court disagrees. While "notice pleading" is certainly the standard under the Federal Rules of Civil Procedure, Rule 9 expressly states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Accordingly, Family Federal has a responsibility to allege, at a minimum, the representations made by Slocum, or his agents, which Family Federal claims were fraudulent. Such information was surely known to Family Federal at the time it drafted its cross-claim. Nor will requiring Family Federal to provide this minimal degree of particularity in any way deprive the jury of its role as the trier of fact.

Family Federal's negligent misrepresentation cross-claim presents similar particularity problems. As discussed above, an attorney's responsibility to provide accurate information is not strictly limited to those with whom he is in contractual privity. However, without particularized allegations of Slocum's representations to Family Federal, it is impossible to determine whether the exception to the privity role is applicable here. Accordingly, the Court will grant the motion to dismiss, but also grant Family Federal an opportunity to amend its cross-claim before dismissing the cross-claim.

### V. *Motions for Summary Judgment*

### A. *Slocum's Motion for Summary Judgment*

■ Slocum moves for summary judgment on the grounds that he could not have

6. *Cf. Security National Bank v. Lish*, 311 A.2d 833, 834–35 (D.C.1973) (attorney who negligently supplies inaccurate information directly to a third-party may be held liable in the absence of contractual privity).

defrauded Nelson with respect to the terms of her loans because they were, in fact, business loans, and that he could not have defrauded her with respect to the possibility of refinancing because she relied only on the representations of defendants Tillette and Butler. He further alleges that there is no factual support for the recognition of an attorney-client relationship upon which a negligence claim must rest.

The Court concludes that material issues of fact remain in genuine dispute, preventing summary judgment. *See* Fed.R.Civ.P. 56(c). Even if, as Slocum asserts, Nelson's loans qualify as "business loans" for the purposes of the applicable usury laws, Nelson adequately has alleged that Slocum fraudulently misrepresented the effective interest rate she was to pay. Thus, even if the interest rate was legal, fraud may still have occurred; that is, one may be fraudulently induced to enter into an otherwise legal contract. With respect to refinancing, a factual dispute exists because Nelson alleges that Slocum, in explaining the loan documents to her, expressly reiterated Tillette's and Butler's promises of long-term refinancing. Finally, as discussed above, the plaintiff adequately has alleged an attorney-client relationship. Whether she in fact relied on Slocum's representations, and whether any such reliance was reasonable under the circumstances, remain for a jury to decide. Accordingly, Slocum's motion for summary judgment is denied.

### B. *Family Federal's Motion for Summary Judgment*

█ Family Federal moves for summary judgment on both the fraud and statutory consumer protection counts of the complaint. With respect to the fraud claims, there are material factual disputes with regard to the elements of a viable cause of action for fraud; that is, there is sufficient support for Nelson's allegations that Family Federal was actively involved, in an ongoing manner, in Nationwide's fraudulent lending practices, that Nelson reasonably relied on misrepresentations sponsored or committed by Family Federal, that misrepresentations regarding the effective interest rate of the loan and the prospect of long-term refinancing were both material and damaging, and that Family Federal was aware of the falsity of the misrepresentations, to preclude summary judgment. Therefore, the motion for summary judgment is denied.

As discussed above in Part III, the statutory claim under the District of Columbia's consumer protection law will be dismissed. Should Nelson choose to assert a claim under Virginia's consumer protection statute, Family Federal would, of course, be entitled to challenge its applicability. However, as a claim under that statute has not yet been presented, the Court will express no opinion on its potential applicability to Family Federal.

### VI. *Objection to Magistrate's Report*

█ By an Order, Report, Memorandum Opinion, and Recommendation dated September 24, 1984, United States Magistrate Arthur L. Burnett, Sr., recommended, *inter alia,* that the Court deny Nelson's motion for certification of the case as a class action. Nelson objects on both procedural and substantive grounds. Procedurally, she argues that the Magistrate lacked authority even to consider the motion, and, substantively, she argues that the Magistrate's conclusion was incorrect. The Court disagrees with both of her arguments.

On July 11, 1984, the Court referred this matter to the Magistrate to resolve "all discovery matters," including Slocum's then-pending motion to compel deposition responses from Nelson regarding Nelson's financial ability to finance the litigation of a class action. Clearly, the validity of Slocum's requests were, in Magistrate Burnett's words, "inextricably involved with the question of whether this case should be certified as a class action...." Statutorily, United States Magistrates have no authority to rule on class action certification motions, 28 U.S.C. § 636(b)(1)(A), but such motions may be referred to a magistrate to conduct evidentiary hearings and to prepare proposed findings of fact and recommendations for disposition. 28 U.S.C.

§ 636(b)(1)(B). Although the Court's referral order did not explicitly direct the Magistrate to make a recommendation with regard to the class certification motion, such a request is implicit in an order to resolve a discovery matter that hinges on the appropriateness of class certification. Of course, the Magistrate's memorandum remains merely a recommendation, subject to *de novo* review by the Court. *See* 28 U.S.C. § 636(b)(1)(C).

The Court has had an opportunity to review the entire record and finds itself in agreement with the Magistrate's conclusions and adopts his recommendation. While the Magistrate's memorandum comes a bit closer to an opinion on the merits of the case than the Court wishes to come, it is clear that the many factual differences among the class of potential plaintiffs precludes certification of a class. *See* Fed.R.Civ.P. 23(a)(2), (3), and (4).[7]

### Conclusion

The Court concludes that under the conflict of law analysis adopted by the District of Columbia courts, Virginia law should be applied in this case. Therefore, plaintiff's claim under the District of Columbia Consumer Protection Procedures Act is dismissed, with leave to amend the complaint within 14 days of the date of this Memorandum Opinion to state a claim under the applicable Virginia statute.

Plaintiff's motion to amend her complaint is granted, and the amended complaint is deemed filed as of the date of this Memorandum Opinion. Accordingly, the motions for entry of default judgments against defendants Tillette, Butler, and Nationwide are denied as moot. Defendants shall respond to the amended complaint, or, if plaintiff avails herself of the opportunity to further amend her complaint to state a consumer protection claim under Virginia

law, to the second amended complaint within 28 days of the date of this Memorandum Opinion. Family Federal's motion for entry of a default judgment on the cross-claim will be held in abeyance, pending a final determination of Family Federal's liability.

Defendant Slocum's motions to dismiss are denied, as is his motion for summary judgment. Family Federal's motion for summary judgment is granted with respect to the claim under the District of Columbia's consumer protection statute, and denied in all other respects. Finally, upon *de novo* consideration of plaintiff's motion for class certification, the Court finds itself in substantial agreement with the United States Magistrate that the motion should be denied. An appropriate Order accompanies this Memorandum Opinion.

### ORDER

This matter is before the Court on the motions of several parties. For the reasons stated in the accompanying Memorandum Opinion, upon consideration of the motions, the oppositions thereto, and the entire record, it hereby is

ORDERED, that plaintiff's motion for leave to amend the complaint is granted. The amended complaint is deemed filed as of the date of this Order. It hereby further is

ORDERED, that plaintiff's motions for entry of default judgment are denied. It hereby further is

ORDERED, that defendant Family Federal Savings & Loan Association's (Family Federal) motion for entry of default judgments will be held in abeyance pending a final determination of Family Federal's liability. It hereby further is

ORDERED, that defendant J. Michael Slocum's motion to dismiss the complaint is denied. It hereby further is

---

7. The Court notes that its decision is in accordance with Judge Miller's decision in *Richardson v. Nationwide Mortgage Corporation,* No. M–84–240, slip op. (D.Md. Oct. 4, 1985) [Available on WESTLAW, DCT database] but rejects Slocum's extraordinary attempt to apply the principles of issue preclusion to this case. There is no suggestion that Nelson was a party in the *Richard-*

*son* case. Although Slocum is correct that the strict requirement of mutuality has been substantially modified, the Court is aware of no decision allowing a prevailing party to use a judgment offensively in a different suit against a party who had no opportunity to litigate that issue in the prior suit. Such a result would offend notions of due process.

ORDERED, that defendant Slocum's motion to dismiss the cross-claim is conditionally granted. Family Federal may file an amended cross-claim within 28 days of the date of this Order. It hereby further is

ORDERED, that defendant Slocum's motion for summary judgment is denied. It hereby further is

ORDERED, that defendant Family Federal's motion for summary judgment is granted with respect to plaintiff's claim under the District of Columbia Consumer Protection Procedures Act, and denied in all other respects. It hereby further is

ORDERED, that plaintiff may, within 14 days of the date of this Order, amend her complaint to allege a violation of Virginia consumer protection laws. It hereby further is

ORDERED, that defendants shall respond to the amended complaint, or in the event that the plaintiff chooses to further amend her complaint as permitted in this Order, to the second amended complaint, within 28 days of this Order. It hereby further is

ORDERED, that plaintiff's motion for class certification is denied.

SO ORDERED.