**Brad WILLIAMS, Plaintiff,**

v.

**CENTRAL MONEY CO., et al., Defendants.**

**Civ. A. No. 96–1993(JR).**

United States District Court, District of Columbia.

July 17, 1997.

---

See also 1997 WL 433585.

Andrew L. Sandler, Rachel A. Mariner, Skadden, Arps, Slate, Meagher & Flom L.L.P., Washington, DC, Jean Constatine Davis, Counsel for the Elderly American Assoc. of Retired Persons, Washington, DC, for Plaintiff.

Nathan I. Finkelstein, Bethesda, MD, for Defendants Industry Mortgage Co., L.P., First Gov. Mortgage and Investors Corp.

Robert E. Sharkey, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, MD, for Defendants Central Money Mortgage Co., Charles Hardesty.

## MEMORANDUM

ROBERTSON, District Judge.

This memorandum records the reasons for an interlocutory order issued in this case [# 461] (1) granting in part and denying in part the joint motion for summary judgment of defendants Central Money Mortgage Co. ("CMM") and Charles Hardesty and (2) denying the motions for summary judgment of defendant First Government Mortgage and Investors Corporation ("First Government") and defendant Industry Mortgage Co.[1]

## I. FACTS

Plaintiff Brad Williams, a resident of the District of Columbia, sued defendants in connection with various loans they made to him. In 1991, Mr. Williams' home was damaged by fire. In March 1992, he asked CMM for a loan to finance repairs. The chronology of the subsequent events is undisputed: 1) a one-year interest only balloon-payment loan for $26,000 at 18% annual interest was arranged by Brian Holman, president of CMM, and executed on April 1, 1992 (the "first loan"); 2) six weeks later Mr. Williams signed a modification of the first loan arranged by Mr. Holman that increased his total debt to $38,000 (the "modification"); 3) on June 10, 1992, the modified first loan was paid off from the proceeds of a 15–year amortizing loan for $43,000 made by CMM to Mr. Williams (the "second loan"); 4) on January 13, 1995, Mr. Williams refinanced the second loan by entering into a 30–year loan with First Government for $58,300 (the "third loan"); 5) First Government sold the third loan to Industry Mortgage soon after its issuance; 6) Mr. Williams defaulted on the third loan, and, on August 1, 1996, Industry Mortgage sent Mr. Williams a foreclosure notice.

Mr. Williams asserted that these loans were all unconscionable and that defendants induced his consent to them by misrepresenting their terms and benefits. Defendants responded that Mr. Williams understood the terms of the loans and entered into them voluntarily and knowingly.

Three causes of action were alleged against all four defendants: 1) violation of the D.C. Consumer Protection Procedures Act ("CPPA"), D.C.Code § 28–3901 et seq.; 2) common law fraud; and 3) unconscionable contract in violation of D.C.Code § 28:2–302. Two additional causes of action were stated only against First Government and Industry Mortgage: 1) violation of the D.C. Usury Statute, D.C.Code § 28–3301 et seq. and 2) a claim for declaratory relief of a valid rescission under the Truth in Lending Act, 15 U.S.C. § 1635. The relief demanded was injunction against the foreclosure, rescission of the loan agreements, refund of monies paid by the lenders to others on plaintiff's behalf, treble damages, punitive damages, and attorney's fees.

## II. COMMON ISSUES OF LAW

### A. Choice of Law

In this diversity action, the District of Columbia's choice of law principles were applied. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). The parties agreed that D.C. law applied to matters of procedure, such as the statute of limitations. The parties disagreed about what substantive law applied, however; the plaintiff argued that D.C. law applied while defendants argued that Maryland law applied.

In deciding which jurisdiction's substantive law applies, the District of Columbia employs a "governmental interest analysis," which requires the court "to evaluate the governmental policies underlying the applicable conflicting laws and to determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." Bledsoe v. Crowley 849 F.2d 639, 641 (D.C.Cir.1988) (internal citations omitted); see also Perkins v. Marriott International, Inc., 945 F.Supp. 282, 284 (D.D.C.1996). In making a determination as to which jurisdiction's governmental

---

1. First Government agreed that its motion to dismiss should be treated as one for summary judgment.

interests take precedent, the courts may consider which jurisdiction has the "most significant relationship" to each issue in dispute.[2] *Long v. Sears Roebuck & Co.*, 877 F.Supp. 8, 11 (D.D.C.1995). Analysis of the contacts is undertaken to help the courts determine which jurisdiction's policy would be most advanced by the application of its law. *See id.* at 11 n. 1. The contacts are thus relevant, but not dispositive, in determining which law applies under the governmental interest analysis.

■ In this case, District of Columbia law was applied, for two reasons. First, the contacts between the parties, the District of Columbia, and the disputed issues were significant. Mr. Williams is a D.C. resident who obtained a loan by using his D.C. home as collateral. None of the defendant corporations was incorporated in the District of Columbia, but all had significant business dealings here, as evidenced by their numerous recent foreclosures on homes in the city. In addition, the notes and deeds for all the loans stated that federal law and D.C. law were to govern any disputes regarding the documents.[3] Second, and more importantly, the District of Columbia has a well-established and substantial interest in protecting its citizens from fraudulent or predatory loan practices, and that interest is promoted by the application of D.C. law in this case.

## B. Statue of Limitations

CMM and Charles Hardesty asserted that the claims brought under the CPPA, common law fraud and unconscionability were barred by the statute of limitations. Plaintiff responded that the statute of limitations for all those claims should be equitably tolled.

■ Courts in the District of Columbia apply the "discovery rule" to determine when a cause of action accrues, absent equitable tolling. "Under this rule, a cause of action

accrues when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Goldman v. Bequai*, 19 F.3d 666, 671–72 (D.C.Cir.1994) (internal citations omitted). Summary judgment is "not appropriate in a case applying the discovery rule if there is a genuine issue of material fact as to when, through the exercise of due diligence, the plaintiff knew or should have known of [the] injury." *Id.* (quoting *Byers v. Burleson*, 713 F.2d 856, 861 (D.C.Cir.1983)).

■ Plaintiff contended that defendants took actions that justified application of equitable tolling in this case. The most persuasive argument for equitable tolling was that Brian Holman, President of CMM, misrepresented material facts about the loans to Mr. Williams. For example, Mr. Holman allegedly stated that CMM was making no money from the loan and that CMM was not the lender. It was unclear whether Mr. Holman made such statements, whether the statements were untrue, whether plaintiff relied upon those statements, or whether such reliance was reasonable.[4] Such fact-bound issues could not be decided on a motion for summary judgment. *See Interdonato v. Interdonato*, 521 A.2d 1124, 1135–6 (D.C.1987) (no summary judgment when unresolved issues of material fact remain about the content of promises made by defendant and whether plaintiff reasonably relied upon the promises).

## C. Basis for Industry Mortgage's Liability

■ Industry Mortgage demanded dismissal because it had no direct contacts with Mr. Williams. Plaintiff responded that the fraudulent conduct of First Government was imputable to Industry Mortgage because Greg Lilienfield, the vice president of First

---

2. For example, the courts consider the place where an injury occurred or where a contract was created, the location of the subject matter of the contract, where the parties are domiciled or incorporated, and the place where the relationship between the parties is centered. See Restatement (Second) of Conflict of Laws § 145 (tort) & § 188 (contract) (1971).

3. The loans were not signed in the District of Columbia.

4. Mr. Williams was justified in relying on a material misrepresentation made by Mr. Holman if Mr. Holman took sufficient steps to induce Mr. Williams to believe that he could trust the defendant's word. *Goldman v. Bequai,* 19 F.3d 666, 674 (D.C.Cir.1994).

Government who had direct contact with Mr. Williams and supervised the issuance of the third loan, was allegedly a principal and shareholder of Industry Mortgage. At oral argument, counsel for Industry Mortgage admitted that Mr. Lilienfield was a shareholder of First Mortgage but denied that he was a principal. The parties continued to dispute the exact nature of the business relationship and whether Mr. Lilienfield had knowledge of the alleged fraudulent conduct. Industry Mortgage accordingly could not be dismissed. See *Slaughter v. Jefferson Fed. Sav. & Loan Ass'n*, 538 F.2d 397, 400 (D.C.Cir. 1976).

## III. SPECIFIC CAUSES OF ACTION

### A. Claim # 1: D.C. Consumer Protection Procedures Act

 Defendants argued that the D.C. Consumer Protection Procedures Act ("CPPA") did not apply in this case and relied for their argument solely on *Nelson v. Nationwide Mortgage Corp.*, 659 F.Supp. 611, 616 (D.D.C.1987). In *Nelson*, the plaintiff, a D.C. resident, obtained a loan for purposes of renovating her D.C. property from a Virginia corporation with its principal place of business in Virginia. The loan transaction occurred in Virginia. Judge Harris ruled that the CPPA could not be applied to those facts: "Nothing in the statute or interpretive case law indicates such a legislative intent, and absent such affirmative evidence the Court will not presume that the statute was intended to apply to every commercial transaction involving a District of Columbia resident, wherever and with whomever that transaction occurs." *Id.* at 616–17.

The CPPA has been applied in at least two cases in which non-D.C. corporations loaned money to D.C. residents. See *Faison v. Nationwide Mortgage Corp.*, 839 F.2d 680 (D.C.Cir.1987), *cert. denied*, 488 U.S. 823, 109 S.Ct. 70, 102 L.Ed.2d 46 (1988); *Lawson v. Nationwide Mortgage Corp.*, 628 F.Supp. 804 (D.D.C.1986). In neither of those cases, however, was the issue of the CPPA's reach directly addressed. In light of the ambiguity in the case law, I respectfully disagreed with the holding in *Nelson* and found the CPPA applicable. In my view, the defendants in this case, by issuing a loan to a D.C. resident and taking his D.C. home as collateral, availed themselves of, and subjected themselves to, the consumer protection laws of the District of Columbia.

The purposes of the CPPA are to "assure that a just mechanism exists to remedy all improper trade practices [and to] promote, through effective enforcement, fair business practices throughout the community...." D.C.Code § 28–3901(b). If the CPPA did not apply to cases like this one, loan and mortgage companies could defeat those statutory purposes and evade D.C. consumer protection laws by locating themselves just across the District line from the D.C. citizens they seek as customers.

The District of Columbia's substantial interest in protecting its citizens from predatory and fraudulent business practices is furthered by applying the CPPA to business transactions, such as the one in this case, that are formally consummated outside D.C. but that have a substantial impact on consumers who reside and property that is located in the District.

### B. Claim # 2: Common Law Fraud

 All the defendants moved for summary judgment as to the fraud claims. Only the motion of Mr. Hardesty, as to whom there were no factual allegations of fraudulent conduct, was granted. The elements of a fraud claim are (1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) with the intent to deceive, and (5) action taken in reliance upon the misrepresentation. *See Kropinski v. World Plan Executive Council—U.S.*, 853 F.2d 948, 953 (D.C.Cir.1988); *Urban Inv., Inc. v. Branham*, 464 A.2d 93, 98 (D.C.1983).

 Williams' deposition testimony provided enough allegations, if accepted by the finder of fact, to prove fraud against CMM, First Government, and Industry Mortgage. Williams alleged that CMM fraudulently represented that Mr. Hardesty was the lender, in the first loan and the modification, in order that CMM could charge an interest rate that violated Maryland law. The allega-

.tion of fraud against First Government was based primarily on First Government's alleged failure to disclose the terms of the loan before settlement. And Williams asserted that Industry Mortgage, through Greg Lilienfield, was aware of and actually participated in the fraud perpetrated by First Government. *See Blackman v. Hustler Magazine, Inc.,* 620 F.Supp. 1501, 1509, *modified on other grounds,* 800 F.2d 1160 (1986) (D.D.C. 1984) (an agent of an entity only binds that entity when the agent acts with actual or apparent authority or the entity ratifies the acts).

## C. Claim # 3: Unconscionability

Plaintiff alleged in his complaint that the loans were unconscionable under D.C. Uniform Commercial Code, D.C.Code § 28:2–302. Defendant noted that the U.C.C. provision applies only to goods, not loans. D.C.Code §§ 28:2–102, 28:2–105(1). Plaintiff responded by stating that his claim of unconscionability was a common law claim based on *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445 (D.C.Cir.1965). That case holds that a contract is unconscionable (and therefore unenforceable) when (1) one party has no meaningful choice and (2) the terms unreasonably favor one side. *Id.* at 449. Plaintiff asserted that the loans in this case met both prongs of the test for unconscionability.

■ The claim of common law unconscionability appears to apply only defensively, for example, as a response to an attempt to enforce a contract. *See* Restatement (Second) of Contracts § 208 comment g. Because the loans issued by CMM and Mr. Hardesty were paid off and no enforcement of those loans was involved, the claims of unconscionability against them were dismissed. The unconscionability claims against First Government and Industry Mortgage, on the other hand, were not dismissed. First Government had sold the mortgage loan and was not the party seeking enforcement, but the unconscionability claim against First Government was not dismissed because disputed issues remained about the relationship between First Government and Industry Mortgage.

## D. Claim # 4: D.C. Usury Statute

■ Under D.C. law, a loan secured by a mortgage or deed of trust violates the Usury Statute if the lender fails to furnish the borrower with a separate written statement that complies with the disclosure provision of the Truth in Lending Act ("TILA"). D.C.Code § 28–3301(f)(3). The Usury Statute is also violated when a lender misrepresents material facts about the loan or fails to state material facts. D.C.Code § 28–3312. As explained in the next section, plaintiff asserted that defendants First Government and Industry Mortgage did not comply with the requirements under TILA. If those allegations were true, then defendants also violated the Usury Statute.

■ Defendants challenged this claim as time-barred, insisting that D.C.Code § 28–3304 applies a one-year statute of limitations. Plaintiff responds that a three-year statute of limitation applies in this case because in interpreting § 28–3301(f), D.C. adopts the regulations that govern TILA, including presumably a three-year statute of limitation that begins when a lender fails to make material disclosures at the time of the loan. Because D.C.Code § 28–3304 appears to apply only to actions to recover usurious interest, and not to failures to comply with TILA disclosures, the plaintiff's reading of the statute was the more natural one. The alleged failure to make the material disclosure occurred well within three years of when this suit was brought, therefore the claim was not barred by the statute of limitations.

## E. Claim # 5: Truth in Lending Act (TILA)

■ Plaintiff requested declaratory relief rescinding the third loan under TILA. TILA regulates consumer credit transactions in which security interest is taken in the borrower's principal residence. 15 U.S.C. § 1601 *et seq.* Under TILA, the lender is required to make five material disclosures to the consumer before the loan can be consummated: the amount financed, the finance charge, the annual percentage rate (APR), the payment schedule, and the total of pay-

ments. 15 U.S.C. § 1602(u); 12 C.F.R. § 226.23 n. 48 (Reg.Z). If a lender fails to make any of the material disclosures, or makes any of them inaccurately, the consumer has the right to rescind the loan transaction for three years from the date of consummation. 15 U.S.C. § 1635; 12 C.F.R. § 226.23(a)(3) (Reg.Z).

Plaintiff alleged that First Government failed to include as part of the finance charge a payment of $1,273.27 for purchase of a credit life insurance policy. Failure to disclose that charge, if purchase of the insurance was a condition of extending the credit, would violate TILA. 12 C.F.R. § 226.4 (Reg. Z). Genuine issues of material fact for trial were whether Mr. Williams willingly chose to purchase the insurance and whether the term of the loan was properly disclosed. The motion for summary judgment on the TILA count was denied.