Thomas PERKINS and Joyce
Perkins, Plaintiffs,

v.

MARRIOTT INTERNATIONAL, INC., a
Delaware Corporation, Defendant.

Civil No. 95–2259 (JLG).

United States District Court,
District of Columbia.

Oct. 31, 1996.

Gregory Allen Cotter, Stanford & Cotter, Washington, DC, for Plaintiffs.

J. Michael Jarrard, Jarrard & Richard, Bethesda, MD, for Defendant.

## MEMORANDUM

JUNE L. GREEN, District Judge.

### I. Introduction

This matter is before the Court on the Motion for Summary Judgment of Defendant Marriott International, Inc., ("Marriott"). The Court grants summary judgment to Marriott, because Marriott has demonstrated that there is insufficient evidence to support the Plaintiffs' case.

### II. Facts

In ruling on this Motion for Summary Judgment, the Court takes the facts in the light most favorable to the Plaintiffs. *Choate v. TRW, Inc.*, 14 F.3d 74, 75 (D.C.Cir.1994) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The plaintiffs, an African–American couple, were guests at the Hunt Valley Inn, operated by Marriott. A disagreement arose concerning an $18 breakfast bill that the Plaintiffs had charged to their overall hotel bill. The Perkinses mistakenly believed that the cost of the breakfast was included in their room rate. Upon being informed of the error,

they agreed to pay the charge at check-out, and were not informed that this was unsatisfactory. Subsequently, they left the hotel to visit relatives. While they were gone, the front desk supervisor ordered that the Plaintiffs be locked out of their room until they paid the breakfast charge. The Plaintiffs returned to their room, late at night, to find their door key inoperable, and were required to pay the breakfast bill and a 75–cent phone charge before being allowed back into their room. Upon re-entering the room, they discovered that their belongings had been searched and left in disarray. They called the front desk for a security officer to investigate, but no one ever came. The Plaintiffs left the next morning.

The Plaintiffs now sue the Defendants for invasion of privacy and intentional infliction of emotional distress. They also have sued under 42 U.S.C. § 1981, claiming that their mistreatment was the product of racial discrimination.

## III. Discussion

### A. Jurisdiction and Choice–of–Law

The Court has original jurisdiction over the section 1981 count pursuant to 28 U.S.C. § 1331 and the common law tort counts under 28 U.S.C. § 1332.

In considering the common law counts, the Court notes that the District of Columbia Circuit "has long 'held that the principles of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), are to be followed analogously by federal courts adjudicating diversity actions in the District of Columbia.'" *Nepera Chemical, Inc., v. Sea–Land Service, Inc.,* 794 F.2d 688, 695 (D.C.Cir.1986). In determining which jurisdiction's law to apply to the two common law tort counts, the Court "must · apply the choice-of-law rules of the District of Columbia." *Poole v. Kelly,* 954 F.2d 760, 763 (D.C.Cir.1992) (*quoting Steorts v. American Airlines,* 647 F.2d 194, 196 (D.C.Cir.1981) (footnotes omitted).

■ For choice-of-law questions, the District of Columbia uses "the 'governmental interests' analysis, under which [the Court] evaluate[s] the governmental policies under-lying the applicable laws and determine[s] which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review." *District of Columbia v. Coleman,* 667 A.2d 811, 816 (D.C.1995) (*citing Hercules & Co. v. Shama Restaurant,* 566 A.2d 31, 40–41 (D.C.1989)).

As part of this analysis, [the Court must] also consider the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145:

a) the place where the injury occurred;

b) the place where the conduct causing the injury occurred;

c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

d) the place where the relationship is centered.

*Id.* (*citing Estrada v. Potomac Elec. Power Co.,* 488 A.2d 1359, 1361 n. 2 (D.C.1985)).

■ The Court applies the law of Maryland to the two common law counts. The injury occurred in Maryland, and was caused by conduct that occurred in Maryland. While Plaintiffs are residents of the District of Columbia, Marriott does business in Maryland. The relationship between the parties is centered in Maryland because Plaintiffs voluntarily traveled to Maryland to stay at the Marriott. Maryland's interest in preventing tortious acts against persons within its borders (whether residents or not) is stronger than any interest the District of Columbia might have in extra-territorial application of its law of torts.

### B. Summary Judgment Standard

The non-moving party's "burden at the summary judgment stage [i]s met if he [ ] establishe[s] that there [i]s a genuine issue of material fact." *Choate v. TRW, Inc.,* 14 F.3d at 76–77. The question is one of law. *Id.* The Court "must determine first whether the moving party discharged its duty by informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of

material fact." *Id.* (*quoting Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). The Court "must then determine whether the nonmoving party successfully established that there is such a genuine issue." *Id.* "Where, as here, 'the nonmoving party shoulders the burden of proof at trial, the movant's burden is met by a sufficient showing ... that there is an absence of evidence to support the nonmoving party's case.'" *Id.*

## C. Invasion of Privacy

▇ Section 16–502 of the Maryland Code provides the following:

(a) Creation of lien.—A hotel keeper has a lien on the baggage or other property in the hotel which belong to or are under the control of a guest for any charge due or to become due to the hotel keeper for:

(1) The price or value of *food* or accommodation;

(b) Right to retain possession.—The hotel keeper may retain possession of the property to which the lien attaches until all charges due or to become due to him are paid.

(c) Sale of property.—If the charges which give rise to the lien are unpaid 15 days after they become due, the hotel keeper may sell the property to which the lien attaches at public sale.

Md.Ann.Code, art. 71, § 4 (1975), ch. 49, § 3 (emphasis added). Maryland's Court of Special Appeals has held (in dicta) that, "because of a hotel keeper's lien ... mere nonpayment of the rent terminates any reasonable expectation of privacy in the hotel room and the property contained therein." *Boone v. Maryland,* 39 Md.App. 20, 24, 383 A.2d 412 (1978). "Pursuant to this exclusive use, possession and control, the hotel manager can give consent to search the room and anything therein." *Id.* at 26, 383 A.2d 412. Plainly, the Maryland Code gave Marriott the right to remove the Plaintiffs' luggage from their room and hold it until they paid their breakfast bill. Plaintiffs were cash customers, and thus Marriott was well within its rights to demand that the breakfast bill be paid forthwith. The Court holds that, under *Boone,* Plaintiffs had lost any expectation of privacy they once had in the room, and cannot, as a matter of law, make a claim for invasion of privacy.

## D. Intentional Infliction of Emotional Distress

▇ In Maryland, "four elements ... must coalesce to impose liability for intentional infliction of emotional distress." *Caldor Inc. v. Bowden,* 330 Md. 632, 625 A.2d 959, 963 (1993). In order for a plaintiff to recover for intentional infliction of emotional distress, "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe." *Id.* 625 A.2d at 963. "[C]ourts must assure that each of the four elements of the tort are established by legally adequate proof. *Id.* "[The case law] ha[s] also noted 'two problems which are inherent in recognizing a tort of this character ... (1) distinguishing the true from the false claim, and (2) distinguishing the trifling annoyance from the serious wrong.'" *Id.* "In addition, ... liability for the tort of intentional infliction of emotional distress should be imposed sparingly, and its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Id.* (internal citations omitted).

In *Caldor,* the plaintiff was falsely accused of stealing from the store in which he worked, and at trial,

testified about the mental and psychological effects he experienced after the incident. According to [his] testimony, he was distraught and worried; he "was hurt a lot" and felt ashamed because his peers saw him being removed from Caldor in handcuffs. [He] also testified that he tended not to socialize as much as before, kept to himself, and did not trust others very readily.... [His] "sadness" and insecurity continued for more than a year and as a result he paid one visit to a psychologist in the winter of 1990.

*Id.* at 963–64. The trial court found that this was insufficient to make a claim of Intentional Infliction of Emotional Distress and granted J.N.O.V. to the defendants. *Id.* at 964.

In this case, Mr. Perkins now wears bifocals, and has headaches, but cannot attribute either of these conditions to the incident, has not been hospitalized, and has not sought medical or psychological treatment as a result of the incident. (T. Perkins Dep. at 177–179). Ms. Perkins stated in her deposition that she cried after the incident, and that she had a severe headache that night and could not get to sleep, and that she talked about the incident all the way home the next day. (J. Perkins Dep. at 73–75). Plaintiffs have failed to show sufficient evidence of severe injury to prove intentional infliction of emotional distress.

### E. Section 1981

Section 1981 reads, in relevant part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, ... as is enjoyed by white citizens....

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981 (1991).

Plaintiffs have failed to establish a prima facie case of racial discrimination under Section 1981. *See Barbour v. Merrill*, 48 F.3d 1270, 1276 (D.C.Cir.1995). Plaintiffs offer two theories as to why a finder of fact could find that Marriott discriminated against Plaintiffs, but fail to point out sufficient evidence to support either theory.

Plaintiffs argue that Marriott personnel knew that the Perkinses were African–American and that "[i]n a search for aspects of the plaintiffs or their behavior that would explain the extreme negative treatment they received, their race stands out as a factor that would differentiate them from the other guests." (Pls.Opp. at 36). This argument begs the question, however, because Plaintiffs fail to offer evidence that a non African–American guest would receive more favorable treatment under like circumstances.

Plaintiffs argue that they were well-behaved guests, and that the only aspect of their behavior that would have called them to the attention of Marriott security personnel is the fact that they owed $18 for breakfast. Again, the relevant question, under Section 1981, is, would a well-behaved non African–American couple, staying at the hotel as cash customers, and who owed $18 for a breakfast bill, have drawn the attention of Marriott security personnel? Plaintiffs offer no evidence that a non African–American couple would have been treated differently under similar circumstances.

Plaintiffs cite the fact that the front desk supervisor "admitted" that he "wanted" to pin-out the Perkinses, and that he researched Marriott's standard operating procedures before doing so, as evidence of personal animus on the part of Marriott personnel. Plaintiffs, however, fail to offer evidence to suggest that the supervisor's actions were motivated by racial animus. Similarly, while it is possible to believe that scattering a guests belongings about their room, and refusing to respond to their call for security assistance are acts that indicate contempt, Plaintiffs offer no evidence that either of these acts was motivated by race.

Plaintiffs offer the deposition testimony of Mr. Sean Kelly, a Marriott employee, in order to bolster their argument that African–Americans are mistreated at the Hunt Valley Marriott. Mr. Kelly stated that African–American patrons had previously complained to him of racial discrimination on the part of Marriott personnel. (Kelly Dep. at 15–21).

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Federal Rule of Evidence ("FRE") 801(c). "Hearsay

is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court. FRE 802. "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter," is not excluded by the hearsay rule." FRE 803(1).

 Counsel for Plaintiffs argues that Mr. Kelly's reporting of the complaints of prior guests is admissible under this exception to the hearsay rule, as a so-called "present sense impression." The Court cannot agree, because the declarations described by Mr. Kelly in his deposition are not descriptions or explanations of *events* or *conditions*, they are merely a recounting of the *opinions* of certain previous guests that the slow or impolite service they perceived themselves receiving was the result of racial bias. There is no hearsay exception for second-hand opinion testimony. Further, Mr. Kelly's assertion that other Marriott employees agreed that the complaints of previous African–American guests were meritorious is hearsay.

"If the witness is not testifying as an expert, the witness' testimony in the form of opinion or inferences is limited to those opinions or inferences which are ... (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." FRE 701. The Advisory Committee Notes to the 1972 Proposed Rules cautions that, "If, ... attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the rule." Mr. Kelly's testimony that the complaints of previous African–American guests were "probably true," (Opp. at 38), as well as his assertion that some Marriott personnel are bigots, (Kelly Dep. at 20–23), are based upon his opinion that he "could tell, ... when someone is being prejudiced." (Id. at 21). Mr. Kelly's testimony adds no specific evidence of racially biased treatment by Marriott personnel against anyone. The Court, therefore, holds that Mr. Kelly's testimony would be inadmissible at trial.

## IV. Conclusion

Plaintiffs have failed to show sufficient evidence to support their claims of invasion of privacy, intentional infliction of emotional distress and racial discrimination under 42 U.S.C. § 1981. Accordingly, the Court grants summary judgment to Marriott on all counts.

An appropriate order is attached to this Memorandum.

### *ORDER*

Upon consideration of Defendant's Motion for Summary Judgment, the Plaintiffs' Response, the Reply, the oral argument of counsel, the entire record and for the reasons given in the accompanying Memorandum, it is by the Court this 30th day of October 1996

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**; it is further

**ORDERED** that this case is **DISMISSED**.