

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-1998

# United States v. Mitchell

Precedential or Non-Precedential:

Docket 97-1295

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Mitchell" (1998). *1998 Decisions.* Paper 113.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/113

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 14, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-1295

UNITED STATES OF AMERICA

v.

BYRON MITCHELL,
            Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 96-cr-00407)

Argued January 21, 1998

Before: SLOVITER, LEWIS* and GARTH, Circuit Judges

(Opinion filed May 14, 1998)

        Robert Epstein (ARGUED)
         Assistant Federal Defender
        Elaine DeMasse
         Assistant Federal Defender
         Senior Appellate Counsel
        Maureen Kearney Rowley
         Chief Federal Defender
        Federal Court Division
        Defender Association of Philadelphia
        Philadelphia, PA 19106

         Attorneys for Appellant
_____

*Judge Lewis heard argument in this matter but was unable to clear
the opinion due to illness.

          Michael R. Stiles
           United States Attorney
          Walter S. Batty, Jr.
           Assistant United States Attorney
           Chief of Appeals
          Paul A. Sarmousakis (ARGUED)
           Assistant United States Attorney
          Philadelphia, PA 19106

           Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

In this case, we must examine whether there is any basis to justify the introduction into evidence of an anonymous note that was plainly hearsay. Appellant Byron Mitchell, who was convicted of conspiracy to commit and commission of Hobbs Act robbery, in violation of 18 U.S.C. S 1951, and use of and carrying a firearm during a crime of violence, in violation of 18 U.S.C. S 924(c), contends that the district court committed reversible error by permitting an anonymous note linking him to the getaway car to be admitted into evidence as a present sense impression, an excited utterance, or a statement containing sufficient indicia of reliability under the residual catch all exception previously sited in Federal Rule of Evidence 803(24).

I.

The facts which appear not to be disputed are that between 9:00 a.m. and 9:15 a.m. on September 12, 1991 two men waited in a check cashing store at 29th and Girard Avenue in North Philadelphia, when an armored truck made a delivery of currency to the store. The assailants were armed with handguns and attacked the delivery man as he entered the store, robbing him of currency in excess of $20,000. The two men fled the scene in a beige car driven by a third person, and engaged in gunfire with those in the armored truck before they sped

2

away. There was evidence that the two men who robbed the agency were William Robinson and Terrance Stewart, both dead at the time of trial. Mitchell was indicted on the theory that he was the third conspirator and operator of the getaway car.

During trial, the police officers testified that at 9:37 a.m. on September 12, 1991 the 911 radio room received an anonymous call in which the caller stated: "[I]n the 1660 block . . . of 32nd street, these guys just dumped this beige car. Apparently, they stole it [be]cause they jumped into another car and took off." The caller also gave the license plate number of the deserted car, which turned out to be the beige getaway car that had been seen at the scene of the robbery. That car had been stolen shortly before the robbery at a gas station not far from the site of the robbery.

At 10:00 a.m., based on the 911 call, police officers found the beige car where the 911 caller had stated it was. A search by FBI agents recovered latent fingerprints and two anonymous notes from the front seat. One note contained the license plate number of the getaway car itself, ZPR-274, and is not challenged on appeal.[1] The other note, which is the subject of this appeal, stated: "Light green ZPJ-254. They changed cars; this is the other car." A check on the light green car revealed that it was a green 1978 Buick registered to Anita Young, then fiancee and later wife of defendant Mitchell.

That afternoon, an FBI agent who was part of a surveillance unit searching for that car observed Mitchell park the green Buick and enter Young's house. He exited shortly thereafter and drove away, with the agent following him. When the agent had grounds for a stop because of traffic violations, he searched Mitchell who was carrying $1,400 dollars in small bills. He also had a receipt from a lawyer for a $600 payment in cash which was made earlier that day.

_____

1. Although Mitchell does not challenge the admissibility of the 911 call or the note containing only the tag number of the getaway car, he argues that they too were erroneously admitted into evidence for the same reason as was the note indicating the switch of cars.

In addition to the testimony about the note referencing the light green car that led the authorities directly to Mitchell, the government presented testimony from Kim Chester, the girlfriend of Robinson, one of the other two robbers, who testified that in early September she overheard the three men discuss the robbery and discuss who had a gun and the need to get a car for the robbery. She further testified that while she was waiting for a bus on the morning of September 12, 1991, Robinson, Stewart and Mitchell drove by in Anita Young's green car and picked Chester up before 8:00 a.m. and drove her to work. While in the car, she heard them discussing how to obtain a getaway car, and heard Mitchell say he was not going to use Young's car for that purpose.

The government also presented testimony of Duane Johnson, an FBI agent specializing in fingerprint analysis, who testified that there were nine points of similarity between two of the fingerprints found in the getaway car and those taken from Mitchell. One fingerprint was on the outside door handle and the other was on the gear shift of the car. Agent Johnson conceded that it was common to have up to one hundred points of comparison when identifying an individual by fingerprint, but stated that he had made identifications on as little as seven.

Except for the testimony of Eileen Lamper, who testified that Mitchell was friends with one of the other robbers (thus supporting Chester's testimony), the other witnesses did not inculpate Mitchell per se; they established that the crime did happen, how it happened, and how it was investigated.

Mitchell sought exclusion of the anonymous note and certain other evidence before trial. He contended that the note was inadmissible hearsay and that its admission violated the Confrontation Clause of the Sixth Amendment. The district court overruled the objections, and the note was admitted. Mitchell was convicted by the jury on each count, and was sentenced to 24 years imprisonment, three years of supervised release, a special assessment of $150, and was ordered to pay restitution in the amount of $19,100.00.

4

We have jurisdiction over this direct appeal pursuant to 28 U.S.C. S 1291.

II.

The district court held that the anonymous note referencing the light green car was admissible as an exception to the hearsay rule as a present sense impression or an excited utterance or under the catch all exception in section 803(24) of the Federal Rules of Evidence. Our standard of review is plenary, both because we are considering whether the district court correctly interpreted the Federal Rules of Evidence and relevant case law, see United States v. Pelullo, 964 F.2d 193, 199 (3d Cir. 1992) ("[t]o the extent the district court's admission of evidence was based on an interpretation of the Federal Rules of Evidence our standard of review is plenary") and because Mitchell's challenge implicates the Confrontation Clause, see Government of the Virgin Islands v. Joseph, 964 F.2d 1380, 1385 (3d Cir. 1992).

A.

Present Sense Impression and Excited Utterance

Federal Rule of Evidence 803(1) provides that a present sense impression is admissible so long as it is "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1) (emphasis added). There are three principal requirements which must be met before hearsay evidence may be admitted as a present sense impression: (1) the declarant must h ave personally perceived the event described; (2) the declaration must be an explanation or description of the event rather than a narration; and (3) the declaration and the event described must be contemporaneous. See 5 J. McLaughlin, Weinstein's Federal Evidence S 803.03 (2d ed. 1997); 2 J. Strong, McCormick on Evidence S 271 (4th ed. 1992).

To qualify as an excited utterance, the Rule requires that it be "[a] statement relating to a startling event or condition

5

made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). The requirements for a hearsay statement to constitute an excited utterance are: (1) a startli ng occasion, (2) a statement relating to the circumstances of t he startling occasion, (3) a declarant who appears to  have had opportunity to observe personally the events, and (4) a statement made before there has been time to reflect and fabricate. See 6 J. Wigmore, Evidence SS 1750-51 (J. Chadbourne rev. 1976).

Both Rules 803(1) and (2) share certain requirements. One of the principal requirements is that the declarant personally perceived the event or condition about which the statement is made. See Miller v. Keating, 754 F.2d 507, 511 (3d Cir. 1985) (personal perception a key element to the excited utterance exception); Bemis v. Edwards, 45 F.3d 1369, 1372-73 (9th Cir. 1995) (stating same for both the present sense impression and excited utterance exceptions). In addition, both hearsay exceptions have temporal limitations which limit admissibility of certain statements. See Bemis, 45 F.3d at 1372.

Mitchell's principal challenge to the admission of the anonymous note is that there is no evidence that the person who wrote the note personally perceived what it described. In support, Mitchell cites our opinion in Miller, 754 F.2d at 511, which presented facts similar to those here, as the statement at issue was anonymous.

In Miller, we stated that "[a] party seeking to introduce [an anonymous statement] carries a burden heavier than where the declarant is identified to demonstrate the statement's circumstantial trustworthiness." Miller, 754 F.2d at 510. We further emphasized: "circumstantial evidence of the declarant's personal perception must not be so scanty as to forfeit the `guarantees of trustworthiness' which form the hallmark of all exceptions to the hearsay rule." Id. at 511.

In Miller, the trial court admitted a statement of an unidentified bystander at the scene of an automobile accident. Contradictory testimony was provided as to whose fault the accident was. Plaintiff sought the admission of the

6

statement of the unidentified person who said, "the bastard cut in," and sought by that statement to establish that the accident was caused by the actions of defendant. Id. at 509.

On appeal we reversed, holding that admission of the anonymous statement was erroneous because the record was "empty of any circumstances from which the trial court could have inferred, by a preponderance, that the declarant saw [the defendant] `cut in.' " Id. at 511 (emphasis added). We found the trial court erred in inferring personal perception on the ground that the declarant would have made the declaration only if he was in a position to do so. Instead, we stated that the words of the statement, or the circumstances surrounding the event, "do not show more likely than not that the declarant saw the event." Id. Inasmuch as it was equally likely that the unidentified declarant was "hypothesizing or repeating what someone else had said," id., the statement was inadmissible as an excited utterance.

Miller is dispositive here. Although the government argues that "[a] common sense reading of the note suggests that the person writing the note was perceiving the event and in close proximity," appellee's br. at 14, the record here is devoid of circumstances indicating by a preponderance that the author of the anonymous note actually saw Mitchell change cars. Thus, the requirement of personal perception necessary for both the present sense impression and excited utterance exceptions to the hearsay rule is not satisfied.

In light of our conclusion, the issue of the temporal limitations of the exceptions is less critical. Nonetheless, we note that there is also no evidence to suggest that the unidentified writer of the note made the statement before s/he had time to reflect and fabricate. The time lapse between the robbery and the writing of the note is not clear. Because the robbery occurred between 9:00 a.m. and 9:15 a.m. and the notes were found in the getaway car a mile away from the scene of the robbery at approximately 10:00 a.m. there could have been a 40 minute time span, probably too long for applicability of the present sense exception. Therefore, the government cannot rely on a hearsay exception which requires the statement to be made

7

virtually contemporaneously with the event being perceived. See, e.g., 2 Michael H. Graham, Handbook of Federal Evidence S 803.1 (4th ed. 1996) ("the theory underlying the present sense impression is that substantial contemporaneity minimizes unreliability due to defective recollection or conscious fabrication").

Of course, if the writer and the 911 caller were the same, and the notes were left shortly before the 911 call at 9:37, the temporal limitation might have been satisfied. See McCurdy v. Greyhound Corporation, 346 F.2d 224, 226 (3d Cir. 1965) (statement admissible under the excited utterance exception even though it was made ten or fifteen minutes after an accident); United States v. Blakey, 607 F.2d 779 (7th Cir. 1979) (holding admissible a statement made up to 23 minutes after it was observed as a present sense impression), overruled in part on other grounds, Idaho v. Wright, 497 U.S. 805 (1990). However, given the total lack of information regarding the circumstances of the note's creation, the trial court could not reasonably find that there was no time to fabricate the statement.

We note that there are other problems as to admission of the note as an excited utterance. There was no indication that the author was under the stress of excitement when s/he wrote the note (or when the 911 call was made), a requirement of the excited utterance exception."The assumption underlying the hearsay exception of Rule 803 (2) is that a person under the sway of excitement temporarily loses the capacity of reflection and thus produced statements free of fabrication." Miller, 754 F.2d at 512. Further, there is no evidence that the parking of the beige car was a shocking or exciting event.

For all of the above reasons, we feel bound to conclude that it was error to introduce the anonymous note as either a present sense impression or an excited utterance exception to the hearsay rule.

B.

The Residual Catch All Exception

The district court also held that the anonymous note was admissible under the residual exception to the hearsay rule, which at the time of trial was found in Fed. R. Evid. 803(24) and which was transferred to new Rule 807 effective December 1, 1997. There was no substantive change in the transfer, and we will refer to the Rule as it was when considered by the district court. Rule 803(24) provides that a statement not specifically covered by any of the traditional hearsay exceptions is admissible if the court determines that the statement is offered as evidence of a material fact, there is no other obtainable evidence on the issue that is more probative, that the interests of justice will be served by its admission, and that the record reflects "equivalent circumstantial guarantees of trustworthiness" for the reliability of the statement. Fed. R. Evid. 803(24).2

The legislative history of Rule 803(24) indicates that Congress " `intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances.' " S. Rep. No. 93–1277, Committee on the Judiciary, reprinted in 28 U.S.C.A., Fed. R. Evid. 803, Historical Note, at 276. Furthermore, the statement must not only meet the rigors of the Federal Rules of Evidence,

_____

2. As presently framed, Rule 807 provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a mate rial fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes o f these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

9

but also of the Confrontation Clause of the Sixth
Amendment. Finally, the Supreme Court has determined
that such statements are " `presumptively unreliable and
inadmissible for Confrontation Clause purposes.' " Idaho v.
Wright, 497 U.S. 805, 818 (1990) (quoting Lee v. Illinois,
476 U.S. 530, 543 (1986)).3

Although the hearsay rule and the Confrontation Clause
protect similar values, see id. at 814, the Confrontation
Clause has a broader reach barring the admission of some
evidence that would otherwise be admissible under
exceptions to the hearsay rules. See California v. Green,
399 U.S. 149, 155-56 (1970). Before a statement will be
admissible, the prosecution must show that "it bears
adequate `indicia of reliability.' " Wright, 497 U.S. at 814-15.
The "indicia of reliability" requirement can be met if the
hearsay statement either falls within a firmly rooted
hearsay exception or if it is supported by a showing of
"particularized guarantees of trustworthiness." Ohio v.
Roberts, 448 U.S. 56, 66 (1980).

By definition, the residual hearsay exception is not a
firmly rooted hearsay exception. See Joseph , 964 F.2d at
1386-87 (citing Wright, 497 U.S. at 817). The district court
found the requisite trustworthiness from other evidence it
considered to be corroborating, i.e., by "the locating of the
fingerprints of defendant Mr. Mitchell, and his operating
the described vehicle [ ] in a short distance away from th[e]
area at a later point that afternoon." App. at 652. In so
finding, the district court erred as a matter of law because
"under the Confrontation Clause, hearsay evidence used to
convict a defendant must possess indicia of reliability by
virtue of its inherent trustworthiness, not by reference to
other evidence at trial." Wright, 497 U.S. at 822. "[T]he use
of corroborating evidence to support a hearsay statement's
`particularized guarantees of trustworthiness' would permit
admission of a presumptively unreliable statement by
bootstrapping on the trustworthiness of other evidence at

_____

3. The Confrontation Clause of the Sixth Amendment, made applicable to
the states through the Fourteenth Amendment, provides: "In all criminal
prosecutions, the accused shall enjoy the right . . . to be confronted
with
the witnesses against him." U.S. Const. amend. VI.

10

trial." Id. at 823. Cf. United States v. Bailey, 581 F.2d 341, 349 (3d Cir. 1978) (corroborating evidence could not satisfy requirement of "equivalent guarantees of trustworthiness" under residual hearsay exception). The theory supporting admissibility is that "the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility." Wright, 497 U.S. at 820. As the Supreme Court noted, the presence of corroborating evidence "more appropriately indicates that any error in admitting the statement might be harmless, rather than that any basis exists for presuming the declarant to be trustworthy." Id. at 823 (internal citation omitted).

Mitchell argues that evaluation of the trustworthiness of the anonymous note reveals that the circumstances surrounding its creation do not possess sufficient guarantees of trustworthiness permitting its admission into evidence. As he points out, the government failed to produce any evidence as to who authored the note or the circumstances under which it was written. Thus, the government failed to meet its burden of showing that cross examination of the author of the note would have been of marginal utility to Mitchell.

The circumstances to which the government points to show particularized guarantees of trustworthiness are all other facts proven at trial, i.e. that the getaway car used in the robbery was found where the 911 caller claimed and that the caller stated that the people in the getaway car drove off in another car. These are not circumstances surrounding the making of the note and, under the holding of Idaho v. Wright, cannot be used to support admission of the evidence. We must therefore conclude that the admission of the anonymous note failed also to meet the requirements of the residual catch all hearsay exception and its incorporation of the Confrontation Clause, and was error.

III.

Harmless Error

Not all error is reversible. We must therefore decide whether the erroneous admission of the anonymous note

11

into evidence constituted harmless error. Although the admission of inadmissible hearsay constitutes nonconstitutional error and is reviewed under a lesser standard than when constitutional error is made, see Lippay v. Christos, 996 F.2d 1490, 1500 (3d Cir. 1993); Government of the Virgin Islands v. Toto, 529 F.2d 278, 283-84 (3d Cir. 1976), in this case we must apply the standard which governs constitutional errors as set forth in Chapman v. California, 386 U.S. 18 (1967). Under this standard, the government must demonstrate "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. at 24. It is the government's burden of persuasion on whether an error is harmless, an issue the government failed to address in its brief.

Mitchell argues that the note could not be considered harmless because it constituted the government's most powerful piece of evidence, as it was the one thing that led the police directly to him. He then argues that the testimony provided by the fingerprint expert, although damaging, could not have been the basis of the jury's decision because it was questioned by the jury, and the testimony of Kim Chester was unreliable. Mitchell therefore asserts that the anonymous note must have contributed "in some manner" to the jury's decision to convict.

Although we may not accept Mitchell's characterization of the note as the "most powerful" evidence, we cannot disregard its effect. There were problems with the evidence on which the government relies. The FBI agent who testified at trial conceded that the latent fingerprints found in the beige getaway car were in a "fragile" and "erode[d]" condition. App. at 342a, 453. He based his opinion of the match on a finding of only nine points of similarity between these prints and the prints taken from Mitchell at the station house. He further testified that the fewest points of similarity that he had ever previously based an opinion upon was seven and that he had never heard of anyone basing an opinion upon fewer. Moreover, while the jurors were deliberating, they sent a note to the judge that they were "struggling with . . . agent Johnson's testimony about fingerprints." App. at 653.

12

The testimony of Chester was certainly incriminating, but on cross examination, Chester conceded that she was a liar and a thief and that, at the time of the robbery, she used drugs. This prompted the district court to instruct the jury that Chester's testimony was to be considered with caution and careful scrutiny. App. at 600-01. Although $1,400 was found on Mitchell when he was arrested, those bills could not be linked to the money stolen at the check cashing store because those serial numbers had not been recorded by the armored car company. Also, although there is some indication from the parties' briefs that Young gave incriminating statements against Mitchell during the investigation of the robbery, her testimony was not elicited at trial because she claimed her marital privilege, having married Mitchell a month after the robbery.

In light of the legitimate questions raised as to the remaining evidence admitted at trial, we are compelled to conclude that although there was circumstantial evidence corroborating the anonymous note, the government has not demonstrated beyond a reasonable doubt that the admission of the note did not contribute to the jury's verdict.

IV.

For the reasons set forth, we will vacate the judgment of Mitchell's conviction and remand to the district court for a new trial.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13