AAMCO TRANSMISSIONS, INC., Plaintiff

v.

**Mark E. BAKER, Defendant.**

**Civil Action No. 06–CV–05252.**

United States District Court, E.D. Pennsylvania.

Dec. 24, 2008.

---

Alan Poliner, James Goniea, AAMCO Transmissions, Inc., William B. Jameson, Cottman Transmission Systems, LLC, William B. Jameson, Cottman Transmission Systems, LLC, Horsham, PA, for Plaintiff.

C. Scott Spear, Phillip D. Berger, Lundy, Flitter, Beldecos & Berger, P.C., Narberth, PA, for Defendant.

### MEMORANDUM OPINION

TIMOTHY R. RICE, United States Magistrate Judge.

Defendant Mark E. Baker has filed two motions in limine (Doc. Nos. 68 & 69) to preclude AAMCO Transmissions, Inc. ("ATI") from admitting audio-tape recordings, debriefing memoranda, shopping memoranda, and a memorandum prepared by Michael J. Pekula, ATI's director of consumer affairs, on June 26, 2006 (the "Pekula Memorandum") into evidence at trial. For the following reasons, I grant Baker's motions in limine because the re-

cordings and memoranda constitute inadmissible hearsay.

## I. *Background*

On July 11, 2003, ATI entered into a franchise agreement with Baker to allow Baker to operate an AAMCO Transmission Center (the "Center") in Tallahassee, Florida. ATI conducted a series of undercover customer visits, or "shoppings," at the Center. Undercover "shoppers" presented a vehicle with an "induced malfunction" to the Center for repair. Immediately after leaving the Center, the shopper met an ATI investigator at a prearranged location where the investigator tape recorded the shoppers' recollection of the transaction. The investigators sent the recordings to ATI's department of consumer affairs, where transcripts were created and labeled "debriefing memoranda." After the investigation, ATI's field investigators prepared detailed memoranda, referred to as "shopping memoranda," of what occurred during the shopping investigation.

On June 26, 2006, Pekula created a memorandum to "file" regarding Baker's Center in Tallahassee, Florida. *See* Defendant Mark E. Baker's Memorandum of Law in Support of Motion in Limine (Doc. No. 69) at Exhibit B, *AAMCO Transmissions, Inc. v. Baker*, No. 06–5252 (E.D. Pa. filed Dec. 5, 2008). The memorandum details the undercover shoppings, including statements made by Baker, as recounted by the shoppers and investigators, and customer feedback, including complaints by customers about their experience with the Center. *See id.* In preparing the memorandum, Pekula reviewed the shopping memoranda created by the investigators, "customer complaint files, notes in the files, [and] documents available to [him] regarding the center." *See id.*, at Exhibit C, at 257:9–14 [hereinafter "Dep. of Michael J. Pekula"].

As a result of the investigations, ATI terminated the franchise agreement based on its belief Baker had failed to deal fairly and honestly with the public. Baker challenges the accuracy of the undercover investigations and argues ATI improperly terminated the franchise agreement. When Baker did not close the Center after ATI terminated the franchise agreement, ATI brought this trademark infringement, unfair competition, and breach of contract action against him. Baker filed a counterclaim alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional interference with existing or prospective contractual relationships.

## II. *Discussion*

Baker seeks to preclude the admission of audio-recordings,[1] the debriefing memo-

---

1. To the extent ATI can identify admissible statements from the audio-tape recordings, it must make several pretrial showings to admit the tapes:

   To lay a proper foundation for the admission of tape recordings, [the party] has the burden to show by clear and convincing evidence that: (1) the recording devices used were capable of recording the conversations; (2) the operators of the recording devices were competent; (3) the tape recordings are authentic and correct; (4) there have been no changes in, additions to, or deletions from the tape recordings; (5) the tape recordings have been properly pre-

served; (6) the speakers on the tape recordings are properly identified; and (7) the consenting party to the recording (if applicable) freely and voluntarily consented to the tape recording of the conversation.

   *United States v. Perez*, No. 94–0192, 1996 WL 4080, at *3 (E.D.Pa. Jan. 3, 1996) (Hutton, J.) (citing *United States v. Starks*, 515 F.2d 112, 121 & n. 11 (3d Cir.1975)).

   Further, the audio-tapes are evidence, not the transcripts or debriefing memoranda. *See* Third Circuit Model Civil Jury Instructions § 2.13 (2008) ATI has not verified the debriefing memoranda are authentic and correct, and Baker alleges the transcripts are not "verbatim." *See* Defendant/Counterclaimant

randa, the shopping memoranda, and the Pekula Memorandum as exhibits because they contain the inadmissible hearsay statements of the shoppers, investigators, Baker, and Baker's employees. He claims the Pekula Memorandum also contains inadmissible hearsay statements of Baker's customers. ATI argues each item falls within the business records exception, *see* Fed.R.Evid. 803(6), the audio-recordings constitute present sense impressions excepted from the hearsay rule, *see id.* at R. 803(1), all statements attributed to Baker or his employees constitute non-hearsay admissions, *see id.* at R. 801(d)(2)(A), and the Pekula Memorandum constitutes a recorded recollection, *see* Fed. R. 803(5). Alternatively, ATI argues the audio-recordings, and the debriefing and shopping memoranda are admissible because they fall within Rule 807, the residual exception to the hearsay rule. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion in Limine to Exclude Various Listed Documents Concerning the Investigation of Defendant's Fromer AAMCO Center (Doc. No. 73). at 9, *AAMCO Transmissions, Inc. v. Baker,* No. 06–5252 (E.D. Pa. filed Dec. 5, 2008) [hereinafter Plaintiff's Response].

An out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls into one of the enumerated hearsay exceptions found in Federal Rules of Evidence 803 and 804, satisfies the residual hearsay exception in Rule 807, or is considered non-hearsay by Rule 801(d). *See* Fed.R.Evid. 801 & 802. ATI, the proponent of the evidence, has the burden of establishing its admissibility.

Mark E. Baker's Memorandum of Law in Support of Motion in Limine to Preclude Exhibits (Doc. No. 68) at 7, *AAMCO Transmissions, Inc. v. Baker,* No. 06–5252 (E.D. Pa. filed Dec. 5, 2008) [hereinafter "Defendant's Motion"]. Pursuant to Fed. R. of Evid.

*See Pittsburgh Press Club v. United States,* 579 F.2d 751, 758 (3d Cir.1978).

It is important to understand how the records are relevant to prove an issue in this case. Here, ATI seeks to use the records, and the statements therein, to prove Baker engaged in unfair and dishonest business practices during the transactions described in the records. Thus, the out-of-court statements are offered to prove the truth of the matter asserted and constitute hearsay unless excepted by the Rules, or are considered non-hearsay by Rule 801(d).

### A. Business Records

Rule 803(6) provides that the following is not excluded by the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make that memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness ... unless the source of the information or the method or the circumstances of preparation indicate a lack of trustworthiness.

Fed.R.Evid. 803(6).

As a threshold matter, the proponent of the documentary evidence must establish the source of the contested information, that is, (1) the author of the document had personal knowledge of the

901(a), the transcripts are inadmissible because they have not been authenticated. I have discretion to determine the accuracy of the transcripts. *United States v. Brown,* 482 F.2d 1226, 1228 (8th Cir.1973).

matters reported; (2) the information he reported was transmitted by another person who had personal knowledge, acting in the course of a regularly conducted activity; or (3) it was the author's regular practice to record information transmitted by persons who had personal knowledge. *See Missimer v. Tiger Machine Co.,* No. 04–3443, 2005 WL 3968133, at *2 (E.D.Pa. Sept. 28, 2005). In addition, the proponent must establish the information was kept in the regular course of ATI's business, and it was ATI's regular practice to prepare such reports. *See* Fed.R.Evid. 803(6); *United States v. Pelullo,* 964 F.2d 193, 200 (3d Cir.1992) (for business record exception to apply, proponent must establish "(1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by the business").

■ "The justification for the business records exception rests on the assumption that business records are reliable because they are created on a day-to-day basis and '[t]he very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision.'" *See Tenney v. City of Allentown,* No. 03–3471, 2004 WL 2755538, at *1 (E.D.Pa. Nov. 30, 2004) (Sanchez, J.) (quoting *McCormick on Evidence* § 286 5th ed.). "This assumption of reliability, accuracy and trustworthiness, however, collapses when 'any person in the process is not acting in the regular course of the business.'" *Id.* (quoting *McCormick on Evidence* § 290). Thus, each participant in the chain producing the record, from the initial observer-reporter to the final entrant, must be acting in the course of a regularly conducted business activity, *see e.g., United States v. Vigneau,* 187 F.3d 70, 75 (1st Cir.1999) (information in business records provided by someone other than person with duty to gather such information in ordinary course of business is inadmissible hearsay and must be redacted from business record prior to its admission); *United States v. McIntyre,* 997 F.2d 687, 698–99 (10th Cir.1993) (motel registration cards should not have been admitted, as guests were not under business obligation to provide the information), or must meet another hearsay exception.

■ In addition, records prepared in anticipation of litigation are not made in the ordinary course of business, *see Palmer v. Hoffman,* 318 U.S. 109, 114, 63 S.Ct. 477, 87 L.Ed. 645 (1943); (reports prepared for the purpose of litigation do not fall within business records exception to hearsay rule because they are not kept in the course of regularly conducted business); *Timberlake Const. Co. v. U.S. Fidelity and Guar. Co.,* 71 F.3d 335, 342 (10th Cir.1995) ("It is well-established that one who prepares a document in anticipation of litigation is not acting in the regular course of business."); *United States v. Casoni,* 950 F.2d 893, 911, n. 10 (3d Cir.1991). Such records lose the assumption of trustworthiness. *Cf. Wertz v. Consolidated Rail Corp.,* No. 91–5093, 1993 WL 327819, at *4 (E.D.Pa. Aug. 16, 1993) (finding report trustworthy as business record because it was not prepared in anticipation of litigation).

### 1. *Audio–Recordings, Debriefing Memoranda, and Shopping Memoranda*

■ ATI has not established the audio-recordings are business records pursuant to Rule 803(6). Even if the ATI investigator who recorded the debriefing interview was acting in the regular course of business in documenting the undercover visit in company files, ATI has not established

the shoppers who provided the information were under a business duty to report it. *See United States v. Pazsint,* 703 F.2d 420, 424 (9th Cir.1983) (finding trial court erred in admitting tape-recorded emergency calls under the business records exception because witness who provided the information that was being recorded was "under no business duty to report"); *see also Parsons v. Honeywell,* 929 F.2d 901, 907 (2d Cir.1991) (statement made by eyewitness in police report was inadmissible under the business record exception because exception applies only if person furnishing the information to be recorded is acting in the regular course of business). Accordingly, the assumption of reliability, accuracy, and trustworthiness underlying Rule 803(6) do not apply to the audio-recordings.[2]

Even assuming ATI somehow can satisfy the requirements of Rule 803(6) for the audio-recordings, debriefing memoranda, and shopping memoranda, the records contain at least two levels of hearsay. First, they contain the investigators' unsworn, out-of-court statements to the shoppers. Second, they contain the shoppers' unsworn, out-of-court statements to the investigators.

■ Multiple hearsay is admissible only if each part of the statements falls within an exclusion from, or exception to, the hearsay rule. *See* Fed.R.Evid. 805; *In re Flat Glass Antitrust Litig.,* 385 F.3d 350, 376 (3d Cir.2004) (when document contains several out-of-court assertions, document is not admissible unless each assertion is admissible under exclusion or exception from hearsay rule). Thus, a business record can be excluded from evidence when it includes hearsay that does not fall under an exception. *See Flat Glass,* 385 F.3d at 376; *cf. Sana v. Hawaiian Cruises, Ltd.,* 181 F.3d 1041, 1045–47 (9th Cir.1999) (business record containing three levels of

hearsay was admissible because each hearsay statement fell within an exception). ATI has not established each hearsay statement falls within an exception.

■ ATI contends the shoppers' statements to the investigators are admissible under the present sense impression exception to the hearsay rule. Under Fed. R.Evid. 803(1), an out-of-court statement is admissible as a present sense impression if it is "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R.Evid. 803(1). This exception has three requirements: "(1) the declarant must have personally perceived the event described; (2) the declaration must be an explanation or description of the event rather than a narration; and (3) the declaration and the event described must be contemporaneous." *See United States v. Mitchell,* 145 F.3d 572, 576 (3d Cir.1998). A statement does not qualify as a present sense impression if it merely reports opinions held by others. *See Perkins v. Marriott Int'l, Inc.,* 945 F.Supp. 282, 287 (D.D.C.1996) (testimony of hotel employee that other African–American guests in addition to plaintiff had complained to him of racial discrimination by hotel personnel was not admissible).

The shoppers' statements do not qualify under Rule 803(1) because they are narrations and their declarations are not sufficiently contemporaneous. In detailing their interaction with the Center, the shoppers narrate their activity at the Center, including conversations with Baker and his employees. They do not explain or describe an event they observed, as contemplated by Rule 803(1). Further, the shoppers merely reported the opinions held by

2. For the same reasons, the debriefing memoranda, which are simply transcripts of the audio-recordings, also do not constitute business records.

others, i.e., Baker and his employees. For example, Barbara Shine, stated to the investigator: "He told me at that point that they didn't know exactly what was wrong with the car that he had to speak to Mike .... [He] explained that I had no overdrive and it would cost me $1,500 to $1,900 to have it repaired."[3] *See* Defendant's Motion at Exhibit E, at 1.

In addition, the statements were not made contemporaneous with the event. The fundamental premise underlying the present sense impression exception "is that substantial contemporaneity of event and statement minimizes unreliability due to [the declarant's] defective recollection or conscious fabrication." *See United States v. Green,* 541 F.3d 176, 180 (3d Cir.2008) (citations omitted); *see also Miller v. Keating,* 754 F.2d 507, 512 (3d Cir.1985) (lack of time to deliberately manipulate truth of account is key). " 'The idea of immediacy lies at the heart of the exception,' thus, the time requirement underlying the exception 'is strict because it is the factor that assures trustworthiness.' " *See Green,* 541 F.3d at 180 (citing 4 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 8:67, 559, 562 (3d ed. 2007); *accord Chambers v. Mississippi,* 410 U.S. 284, 298–99, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (hearsay exceptions are premised on the idea that the particular circumstances surrounding the making of certain utterances guarantee their reliability)). The passage of time— or the lack thereof—establishes the reliability of the declaration; "hence the greater the passage of time, the less truthworthy the statement is presumed to be, and the more the scales should tip toward inadmissibility." *See Green,* 541 F.3d at 180– 81. A brief temporal lapse, however, is permissible to accommodate " 'the human

realities that the condition or event may happen so fast that the words do not quite keep pace.' " *See id.* at 180 (quoting 4 *Federal Evidence* § 8:67, at 562; Fed. R.Evid. 803(1) Adv. Comm. Notes (1975) ("[w]ith respect to the time element, [803(1) ] recognizes that in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable")).

ATI argues the investigators debriefed the shoppers "as soon as they left the Center, while the events were fresh in their mind." Plaintiff's Response at 8. It is not enough for ATI to have an immediate interview with the witness; rather, to qualify under Rule 803(1), the statements must have been made immediately after the witness perceived the event.

For example, in her interview, Barbara Shine described arriving at the Center and completing paperwork before "[a] guy came out and got into [my] truck and I think he drove about 10 minutes before he came back." *See* Defendant's Motion at Exhibit E, at 1. She then described that after the road test, an unidentified mechanic or technician checked the fluids, walked away from the truck, conferred with Baker, then called Ms. Shrine to the window to explain what was wrong with the car and gave her an estimate. *See id.* All of these events occurred before Ms. Shrine left the Center and met with the investigator at a predetermined location. Thus, Ms. Shrine's statements to Investigator Riccardi were not made while contemporaneously perceiving or interacting with the Center, they were made approximately one hour later. *See* Defendant's Motion at Ex. I, at 3 (stating Ms. Shine drove her vehicle to the Center at 10:16 a.m. and returned to a prearranged loca-

---

**3.** The other three shoppers on the audio-recordings made similar statements. *See* De-fendant's Motion at Exhibits F–H.

tion to meet with an ATI investigator at 11:14 a.m.).[4] Moreover, the shoppers experienced an intervening event—traveling to a prearranged location to meet with the investigators. This interruption tips the scales toward inadmissibility, and further undermines the reliability of the shoppers' statements. *See Green*, 541 F.3d at 180.

As a result, the statements were made after the declarants had an opportunity to reflect on the event, which undermines the reliability justification of Rule 803(1). *Compare United States v. Shoup*, 476 F.3d 38, 42 (1st Cir.2007) (911 phone call made "only one or two minutes ... immediately following" event admissible), *United States v. Danford*, 435 F.3d 682, 687 (7th Cir. 2006) (statement made "less than 60 seconds" after witnessing robbery qualified as present-sense impression), *and United States v. Jackson*, 124 F.3d 607, 618 (4th Cir.1997) (statement by witness to police upon their arrival at scene that defendant was threatening to kill her family was admissible as "description of ongoing events"), *with United States v. Manfre*, 368 F.3d 832, 840 (8th Cir.2004) (statement made after "an intervening walk or drive" following event not admissible; "The present-sense-impression exception ... is rightfully limited to statements made while a declarant perceives an event or immediately thereafter, and we decline to expand it to cover a declarant's relatively recent memories."), *Mitchell*, 145 F.3d at 577 (where robbery occurred between 9:00 a.m. and 9:15 a.m. and notes were found in getaway car a mile from the crime scene at approximately 10:00 a.m., intervening lapse was "probably too long for applicability of the present-sense impression"), *and Hilyer v. Howat Concrete Co., Inc.*, 578 F.2d 422, 426 n. 7 (D.C.Cir.1978) (excluding statement made between 15 and 45 minutes following event).

ATI correctly observes any statements made by Baker or his employees are not hearsay because they constitute party admissions. Rule 801(d)(2)(A), (D) provides "[a] statement is not hearsay if ... (2)[t]he statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or ... (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made

---

4. The audio-tape recordings and debriefing memoranda reflect similar experiences by the other three shoppers. For example, Investigator Shoemaker stated to shopper Amy Bock: "Amy you've just returned from the AAMCO center that you entered earlier this morning ...." *See* Defendant's Motion at Exhibit F, at 1. Shopper Robert Ratini had a similar experience as Ms. Shine because a mechanic test drove his car, pulled it into a garage to inspect it, returned to speak with Mr. Ratini, Mr. Ratini "sat there and waited for confirmation for them to go ahead with the activity," and was told the car would not be done until 2:00 p.m. *See* Defendant's Motion at Exhibit G, at 1–2. Another debriefing occurred at 2:15 p.m. after Mr. Ratini called the Center to check on the car. *See id.* at 3–4. A final debriefing occurred after Mr. Ratini left the Center. *See id.* Mr. Ratini acted as a shopper on another car, a Grand Prix, and informed Investigator Riccardi "[t]his morn-

ing Mr. Baker called me" and later, Investigator Riccardi stated, "Mr. Ratini and I just returned from retreiving his vehicle from the AAMCO center in Tallahassee, FL." *See* Defendant's Motion at Exhibit H, at 3, 4. These statements, like Ms. Shine's statements, lack substantial contemporaneity. *See Green*, 541 F.3d at 181.

Moreover, the shoppers were at the Center for at least fifty minutes before meeting the investigators at the prearranged location. *See* Defendant's Motion at Exhibit I, at 3 (stating Barbara Shine drove vehicle to the Center at 10:16 a.m. and returned to the prearranged location at 11:14 a.m.); Exhibit J, at 3 (stating Amy Bock entered the Center at 10:15 a.m. and left the Center at 11:35 a.m.); Exhibit K, at 2–3 (stating John McCarthy entered the Center at 9:40 a.m. and left approximately fifty minutes later); Exhibit L, at 2 (stating John McCarthy was at the Center for approximately one-and-a-half hours).

during the existence of the relationship
...."

Baker's statements, however, are reported only through the hearsay statements of the shoppers to the investigators. They are admissible only if ATI satisfies Rule 805 or if the shoppers testify and are subject to cross-examination.

## 2. *Pekula Memorandum*

■ Similarly, ATI has not established the Pekula Memorandum is a business record pursuant to Rule 803(6). It has failed to show Pekula created the memorandum in the course of regularly conducted business activity, and not in anticipation of litigation with Baker. For example, when asked to identify the Pekula Memorandum at his deposition, Pekula stated "[t]his is a file memorandum that I believe I prepared in June of '06 basically giving me—providing myself with my own understanding of the history of my experiences or the Consumer Affairs experiences with Mr. Baker in the shop in Tallahassee." *See* Dep. of Michael J. Pekula at 256:20–24; 257:1–2. When asked why he prepared the memorandum, Pekula stated "[i]t may have been in anticipation of an affidavit. I don't recall. Just probably to get my thoughts in order on the point of bringing him in and getting him to meet with us." *See id.* at

257:3–8. These statements demonstrate Pekula was not acting in the regular course of business when he created the memorandum. Rather, it appears Pekula prepared the memorandum only to memorialize his own recollection of Baker's dealings with ATI and its customers.

Even if Pekula was acting in the regular course of business in documenting the undercover visit and customer complaints in company files, ATI has not established the shoppers and customers who provided the information were under a business duty to report it. *See Pazsint,* 703 F.2d at 424; *see also Parsons,* 929 F.2d at 907. Accordingly, the assumption of reliability, accuracy, and trustworthiness underlying Rule 803(6) do not apply to the Pekula Memorandum.[5]

## B. *Residual Exception*

Alternatively, ATI argues the audio-recordings, the debriefing memoranda, and the shopping memoranda should be admitted pursuant to Rule 807 because they cannot be admitted through "any other reasonable means available to ATI" and it would be in the interests of justice. *See* Plaintiff's Response at 9.

---

**5.** ATI also contends that the Pekula Memorandum is admissible under the recorded recollection exception to the hearsay rule. *See* Fed.R.Evid. 803(5). Rule 803(5) provides

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not be received as an exhibit unless offered by an adverse party.

Fed.R.Evid. 803(5). Rule 803(5), by its very language, contemplates the witness testifies

he made the record himself, reviewed and adopted the memo at a time when it was fresh in his mind, but now has insufficient recollection to testify fully and accurately before the document can be read at trial. *See Alicea v. Ralston,* 279 Fed.Appx. 179, 182 (3d Cir. 2008) (citing *United States v. Mornan,* 413 F.3d 372, 377 (3d Cir.2005)). Here, Pekula has not made these required admissions, nor has he addressed the multiple hearsay issues of Rule 805.

If, while testifying at trial, Pekula is unable to remember information contained in the memorandum, counsel could use the memorandum to refresh his recollection pursuant to Rule 612, or seek to read the memorandum into evidence if the requirements of Rule 803(5) are satisfied.

The residual hearsay exception is invoked rarely in exceptional circumstances. *Bohler–Uddeholm America, Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 112 (3d Cir.2001); *United States v. Mitchell,* 145 F.3d 572, 578 (3d Cir.1998). "The proponent of the statement bears a heavy burden ...," *United States v. Washington,* 106 F.3d 983, 1001–02 (D.C.Cir.1997), and its invocation demands "some degree of rigor," *Trustees of the University of Pennsylvania v. Lexington Ins. Co.,* 815 F.2d 890, 906 (3d Cir.1987) (citations omitted).

Rule 807 provides:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Thus, the statement must be trustworthy, material, probative, in the interests of justice, consistent with the purposes of the Rules of Evidence, and accompanied by proper notice. *See, e.g. Coyle v. Kristjan Palusalu Maritime Co., Ltd.,* 83 F.Supp.2d 535, 545 (E.D.Pa.2000) (Robreno, J.). "[H]igh degrees of probativeness and necessity" are required. *United States v. Bailey,* 581 F.2d 341, 347 (3d Cir.1978).

Factors relevant to trustworthiness include: (1) whether the statement was made under oath; (2) whether the statement was voluntarily made; (3) whether the statement was based on personal knowledge; (4) whether the declarant made a prior inconsistent statement; (5) whether the statement was videotaped; (6) whether the declarant was subject to cross examination; (7) the proximity of time between the events described and the statement; (8) whether the statement is corroborated; (9) the declarant's motivation to fabricate; (10) whether the statement is prepared in anticipation of litigation; (11) the spontaneity of the statement; and (12) whether the declarant's memory was faulty. *Greco v. Nat'l R.R. Passenger Corp.,* No. 02–6862, 2005 WL 1320147, at *5 (E.D.Pa. June 1, 2005) (Surrick, J.).

### 1. *Trustworthiness*

The statements contained on the audio-recordings and in the debriefing and shopping memoranda are not trustworthy because: (1) they were not made under oath; (2) the investigator's statements in the shopping memoranda were not based on personal knowledge; (3) the declarants were not subject to cross-examination; (4) the shoppers' statements were made to the investigators nearly an hour after the shoppers arrived the Center; (5) the statements were not corroborated; and (6) they were not spontaneous. *See id.* Thus, for these reasons, I find the evidence does not contain the requisite guarantees of trustworthiness.

### 2. *Materiality*

There is no question the evidence is material to the litigation. ATI claims Baker breached the franchise agreement because he failed to deal fairly and honestly with the public. Thus, any actions taken by Baker and his employees at the

Center during the investigation are directly at issue. Both parties agree the statements contained on the audio-recordings and in the debriefing and shopping memoranda are material. *See* Defendant's Motion at 10 ("Such serious allegations [Baker failed to deal fairly and honestly with the public] cannot be proven by hearsay statements . . . ."); Plaintiff's Response at 9 ("These material facts lay at the heart of this case . . . .").

### 3. *Probativeness*

■ The audio-recordings, debriefing memoranda, and the shopping memoranda are not more probative than any other evidence ATI could obtain through reasonable efforts. ATI seeks to introduce statements made by undercover shoppers and ATI investigators. The most highly probative evidence ATI can set forth, however, would be the eyewitness testimony of the shoppers and the investigators. ATI first must show it made reasonable efforts to locate these witnesses. *See e.g., Wezorek v. Allstate Ins. Co.*, No. 06–1031, 2007 WL 1816293, at *4 (E.D.Pa. June 22, 2007) (party showed it made reasonable efforts to locate witness by providing an affidavit from a seasoned law enforcement officer turned private investigator, who searched for witness for four months before learning witness had returned to a remote part of Mexico). ATI has failed to make this showing.

### 4. *Interests of Justice and the Purpose of the Rules*

■ Admitting the audio-recordings, debriefing memoranda, and shopping memoranda would undermine the objective of the Federal Rules of Evidence, "to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Fed.R.Evid. 102.

Admitting this evidence would give ATI the unfettered ability to present a one-sided version of events, which Baker could not test through cross-examination. Admission would hinder the fact-finder in determining the truth because Baker would be unable to adequately challenge the undercover investigation. If the audio-recordings and the debriefing and shopping memoranda are excluded, however, ATI is not left without any substantive evidence of the investigations because it could call the shoppers and investigators to testify at trial.

An appropriate Order follows.

### ORDER

AND NOW, this 24th day of December, 2008, upon consideration of the parties' filings, it is ORDERED that Defendant's motion in limine (Doc. Nos. 68 & 69) are GRANTED for the reasons stated in the accompanying Memorandum Opinion.