Newton A. GREGORIO, Plaintiff,

v.

Kimberly L. GORDON,
et al., Defendants.

Civil Action No. 14–374 (RBW)

United States District Court,
District of Columbia.

Signed 06/29/2015

Dean Gregory, Law Offices of Dean Gregory, Washington, DC, for Plaintiff.

## ORDER

REGGIE B. WALTON, United States District Judge

The plaintiff, Newton A. Gregorio, on behalf of himself and all other similarly situated individuals, filed this civil action against the defendants, Kimberly L. Gordon, National Debt Management LLC, Bruce Dwain Atherton, Debt Restructuring America, Inc. ("Debt Restructuring, Inc."), and fifty John and/or Jane Does.[1] First Amended Complaint ("Am. Compl.") ¶ 4. The plaintiff alleges that the defendants fraudulently induced him to enter into a contract for debt-settlement services and subsequently withdrew monthly fees from his bank account without ever settling any debts for him. See, e.g., id. ¶¶ 15–19. As a result of these alleged transgressions, the plaintiff asserts several claims

under District of Columbia and federal laws, seeking various forms of relief. See id. ¶¶ 39–71. Currently before the Court is the Verified Motion of Defendant Bruce Dwain Atherton to Dismiss for Lack of [Personal] Jurisdiction ("Def. Atherton Mot.") and the plaintiff's Motion for Class Certification ("Class Mot."). Upon careful consideration of the parties' submissions,[2] the Court concludes for the reasons below that it must grant defendant Atherton's motion to dismiss and deny the plaintiff's motion for class certification.

## I. BACKGROUND

The following allegations are derived from the complaint. "In August 2012, [the] [d]efendants' employee[, Anthony Reese,] contacted [the plaintiff] by telephone and encouraged [him] to engage their debt settlement services." Am. Compl. ¶ 20. The defendants then mailed the plaintiff a proposed agreement, seeking "authoriz[ation] ... to represent him in negotiating the 'validity, reduction, settlement, and payment as may be required, of accounts owed to [his] creditors," id. ¶ 24, which already had his "initials and signature ... electronically affixed" to it, id. ¶ 22. The plaintiff agreed to retain the defendants' services. See id. ¶¶ 16–17, 21 (alleging that the plaintiff was fraudulently induced into agreeing to the defendants' proposal). The plaintiff, however, "never granted [the]

---

**1.** The plaintiff's initial complaint listed the Logue Law Firm P.C. and Alan Keith Logue as defendants in this case. See, e.g., Complaint ("Compl.") at 1; id. ¶¶ 9–12. Thereafter, the plaintiff voluntarily dismissed these defendants from the case. See November 13, 2014 Minute Order ("The plaintiff appeared before the Court on November 7, 2014 for an initial scheduling conference, where, among other things, the Court considered ... the plaintiff's oral motion to dismiss defendants Logue Law Firm P.C. and Alan Keith Logue.

In accordance with the oral rulings made by the Court during the conference, it is hereby ORDERED that ... the plaintiff's motion to dismiss is GRANTED.").

**2.** In addition to the filings already referenced, the Court considered the plaintiff's Opposition to Motion to Dismiss ("Pl.'s Opp'n") in rendering its decision. Individual, pro se defendant Atherton did not file a reply to the plaintiff's opposition.

[d]efendants authorization ... to debit his bank account." Id. ¶ 26.

Despite the absence of any authorization to debit the plaintiff's bank account, the defendants nevertheless "began debiting [his] bank account [in the amount of] $256.29 per month." Id. ¶ 25. And they continued to do so even "knowing [that] they could not provide the promised services to [the plaintiff]." Id. ¶ 25. Eventually, the plaintiff realized that the defendants were not rendering any of the promised services on his behalf. See id. ¶¶ 28–29. The plaintiff, therefore, "contacted his bank and entered a Stop Payment Notice on June 26, 2013."[3] Id. ¶ 29.

In response to the alleged conduct, the plaintiff commenced this action against the defendants, asserting that they violated several District of Columbia and federal laws. See Am. Compl. ¶¶ 39–71. Individual defendant Atherton, proceeding pro se, has now moved to dismiss for lack of personal jurisdiction. See Def. Atherton Mot. at 1.

## II. LEGAL STANDARD

 When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "a plaintiff must make a prima facie showing of the pertinent jurisdictional facts." First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1378 (D.C. Cir. 1988) (citations omitted). "[S]pecific acts connecting [the] defendant with the forum" must be alleged by the plaintiff, id. (citation and internal quotation marks omitted) (altera-

tion in original), and mere "[c]onclusory statements '[do] not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction,'" GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1349 (D.C. Cir. 2000) (quoting First Chi., 836 F.2d at 1378–79) (alteration in original). In considering a Rule 12(b)(2) motion, "the Court is not required to assume the truth of the plaintiff['s] allegations and instead 'may receive and weigh affidavits and other relevant matter to assist in determining jurisdictional facts.'" Orellana v. CropLife Int'l, 740 F.Supp.2d 33, 37 (D.D.C. 2010) (Walton, J.) (quoting United States v. Philip Morris Inc., 116 F.Supp.2d 116, 120 n.4 (D.D.C. 2000)). However, "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990) (citation omitted).

## III. ANALYSIS

Defendant Atherton contends that he does not have sufficient contacts with the District of Columbia to warrant this Court exercising personal jurisdiction over him.[4] See Def. Atherton Mot. at 3. In response, the plaintiff argues that the Court has jurisdiction over defendant Atherton because this case arises out of the transaction of business in the District of Columbia by defendant Atherton's agents. See Pl.'s Opp'n at 2, 4–5.

 Personal jurisdiction comes in two distinct forms: "(1) general, 'all purpose' adjudicatory authority to entertain a

---

3. Curiously, although the plaintiff denies authorizing the defendants to debit money from his bank account, the defendants debited money from his account for more than six months before the plaintiff decided to contact his bank and order a stop payment. See Am. Compl. ¶¶ 25, 29 (alleging that unauthorized withdrawals began in September 2012 and

that the plaintiff stopped payment in June 2013).

4. Given the defendant's pro se status, the Court is mindful of its obligation to construe his motion liberally. See, e.g., Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

suit against a defendant without regard to the claim's relationship vel non to the defendant's forum-linked activity, and (2) specific jurisdiction to entertain controversies based on acts of a defendant that touch and concern the forum." Steinberg v. Int'l Criminal Police Org., 672 F.2d 927, 928 (D.C. Cir. 1981). This civil action implicates only the latter form, as there is no suggestion that defendant Atherton, who resides outside the District of Columbia, has a connection to the District of Columbia that would be sufficient to support general jurisdiction. See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (explaining that, where a defendant's contacts with the forum are "continuous and systematic," the forum will have jurisdiction over any matter involving the defendant). Thus, the Court may exercise specific jurisdiction over defendant Atherton only if the plaintiff has pleaded "facts sufficient to satisfy (1) the District of Columbia's long-arm statute, and (2) the constitutional requirements of due process." Cannon v. Wells Fargo Bank, N.A., 926 F.Supp.2d 152, 166 (D.D.C. 2013). Under the District of Columbia's long-arm statute, personal jurisdiction may exist if a person, among other activities, "transact[s] . . . business in the District of Columbia" through an agent.[5] D.C. Code § 13–423(a)(1) (2001); see also Nat'l Cmty. Reinvestment Coal. v. NovaStar Fin., Inc., 631 F.Supp.2d 1, 6 (D.D.C. 2009) ("Subsection (a)(1) [of the District of Columbia long-arm statute] 'is given an expansive interpretation that is coextensive with the due process clause.'" (quoting Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004))). "Generally an agency relationship results when one person authorizes another to act on his behalf

subject to his control, and the other person consents to do so." Smith v. Jenkins, 452 A.2d 333, 335 (D.C. 1982). "Without control over the forum state actor, it cannot be said that the nonresident defendant is purposefully avail[ing] itself of the privilege of conducting activities within the forum State." Id. (internal quotation marks and citation omitted).

█ Particularly relevant to this case is the "fiduciary shield doctrine." Nat'l Cmty. Reinvestment, 631 F.Supp.2d at 5. Under this doctrine, "courts [generally] cannot exert jurisdiction over individual corporate officers or employees 'just because . . . court[s] [have] jurisdiction over the corporation.'" Kopff v. Battaglia, 425 F.Supp.2d 76, 84 (D.D.C. 2006) (quoting Flocco v. State Farm Mut. Auto. Ins. Co., 752 A.2d 147, 162 (D.C. 2000)); see also Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him."); Rush v. Savchuk, 444 U.S. 320, 331–32, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) (rejecting aggregation of co-defendants' forum contacts in determining personal jurisdiction because the requirements for personal jurisdiction "must be met as to each defendant over whom a state court exercises jurisdiction"). Jurisdiction over individual corporate officers or employees exists, however, if they are "more than an employee" of the corporation. Nat'l Cmty. Reinvestment, 631 F.Supp.2d at 5 (internal quotation marks omitted); see also id. at 6 (holding that president of corporation who personally developed and implemented discriminatory policies of corporation and ex-

---

5. None of the other provisions in the District of Columbia's long-arm statute are applicable and the plaintiff does not assert otherwise.

See Pl.'s Opp'n at 2–3 (citing only D.C. Code § 13–423(a)(1) (2001)).

erted significant influence was not protected by the fiduciary shield doctrine).

Here, the Court finds that it cannot exercise jurisdiction over defendant Atherton, as doing so would comport with neither the District of Columbia's long-arm statute nor the Constitution. First, the plaintiff has failed to demonstrate that Debt Restructuring, Inc. and Atherton are proper defendants in this case. The plaintiff does not dispute that defendant Atherton was "a shareholder and consultant" to Debt Restructuring Inc. and that Debt Restructuring, Inc. was "administratively dissolved" as of "September 10, 2011." Def. Atherton Mot. at 1, 2; see also Class Mot. at 3 (plaintiff suggesting that Debt Restructuring, Inc. ceased doing business on or about February 27, 2012). But the conduct that allegedly harmed the plaintiff occurred no earlier than August 2012. Am. Compl. ¶ 20. Second, even if the Court assumes that defendant Atherton's co-defendants are responsible for the alleged harm—and further assumes that the Court has personal jurisdiction over the co-defendants, see infra n.5—the plaintiff has not pleaded sufficiently an agency relationship between defendant Atherton and his co-defendants. He does not sufficiently allege that the conduct of the co-defendants, or even Mr. Reese, was at the behest of defendant Atherton. Associated Producers, Ltd v. Vanderbilt Univ., 76 F.Supp.3d 154, 166 (D.D.C. 2014) (declining to exercise jurisdiction over employer and finding no agency relationship between employer and employee where plaintiff did "not establish that [the employer] actually 'authorize[d] another to act on [its] behalf'" (quoting Smith, 452 A.2d at 335 (alteration in original))). Indeed, when the plaintiff allegedly fell victim to the fraudulent conduct, see Am. Compl. ¶ 20 (alleging that Mr. Reese first contacted the plaintiff in August 2012); id. ¶ 25 (alleging that co-defendants began debiting the plaintiff's bank account without authorization on September 20, 2012), defendant Atherton was in a federal penitentiary, see Def. Atherton Mot. at 1, 2 (explaining that he was in federal penitentiary between September 7, 2010 and February 27, 2013). And after defendant Atherton was released from federal custody, he neither engaged in nor rendered any debt-settlement services. See id. at 2 ("[Defendant] Atherton demanded to review the books and records of the various companies [formed by defendant Gordon] in order to perform consulting work, but [the demand] was refused by . . . [d]efendant . . . Gordon."); id. at 3 ("[Defendant] Atherton . . . was[ ] in no way[ ] involved with the business activities of . . . [d]efendant . . . Gordon or any business entity she controlled or formed, which may have had some contact with the [p]laintiff . . . ."). These facts are uncontested by the plaintiff. Where, as here, "[t]he Court is left with nothing more than a bare allegation of agency," the allegation alone is "insufficient to establish personal jurisdiction." Khatib v. Alliance Bankshares Corp., 846 F.Supp.2d 18, 33 (D.D.C. 2012) (internal quotation marks omitted); see also Mouzon v. Radiancy, Inc., 85 F.Supp.3d 361, 371–72 (D.D.C. 2015) (declining to exercise jurisdiction where plaintiffs alleged that a company "ha[d] transacted business in the District of Columbia" but "d[id] not suggest . . . that [the chief executive of the company] took any specific actions to target the District of Columbia"); Nat'l Cmty. Reinvestment, 631 F.Supp.2d at 5 ("[A]n individual's role as a corporate officer, without more, is not a sufficient basis for exercising personal jurisdiction over the officer in his individual capacity."); Wiggins v. Equifax Inc., 853 F.Supp. 500, 503 (D.D.C. 1994) ("The fact that [the individual defendants] may have acted in a supervisory capacity over persons with

contacts with the District [of Columbia] also fails to create personal jurisdiction.").

▮▮▮▮ Finally, even assuming that defendant Atherton's alleged contacts with the District of Columbia constituted transacting business under Section 13–423(a)(1) of the District of Columbia's long-arm statute, due process considerations still preclude the exercise of jurisdiction in this case. Where a plaintiff's claim does not arise out of a nonresident defendant's contacts with the forum, the defendant must have "minimum contacts" with that forum such that personal jurisdiction would "not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted). Such minimum contacts must arise from "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the [District of Columbia], thus invoking the benefits and protections of its laws." Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty., 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In other words, defendant Atherton's "conduct and connection with the [District of Columbia must have been] such that [he] should reasonably anticipate being haled into court" in the District of Columbia. World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

In this case, there is nothing to suggest that defendant Atherton "purposefully directed" any activities at residents of the District of Columbia or that he has any "contacts, ties, or relation," to the District of Columbia. Burger King Corp., 471 U.S. at 472, 105 S.Ct. 2174. The alleged harm sustained by the plaintiff stems from a single contract negotiation for debt-settlement services, wherein the resulting contract is silent as to, among other things, whether the defendants would be rendering their services in the District of Columbia. See Am. Compl. ¶¶ 20–24. And even with the assumption that defendant Atherton had some involvement with this negotiation—which he did not, as the Court has explained above—this singular contact has long been held to be an insufficient minimum contact for the Court to exercise jurisdiction. See, e.g., World Wide Travel Inc. v. Travelmate US, Inc., 6 F.Supp.3d 1, 8 (D.D.C. 2013) ("[N]o decision of which the Court is aware has found personal jurisdiction here based solely on the fact that a defendant initiated contract negotiations (and subsequently entered into a contract) with a D.C. counterparty. In each case, some additional factor was present that tipped the scales in favor of personal jurisdiction, most commonly that the work of the contract was to be performed in the District [of Columbia]. The balance has been struck this way for good reason. If a plaintiff could hale a defendant into court simply because he took the first step in establishing a contractual relationship between them, it would cut almost to the bone the principle that a contract with a forum resident alone is not enough to create personal jurisdiction over a defendant." (internal citations omitted)). In short, the Court concludes that neither the District of Columbia's long-arm statute nor the Constitution allows the Court to exercise jurisdiction over defendant Atherton, and so his motion will be granted.

## IV. THE PLAINTIFF'S CLASS CERTIFICATION MOTION

The plaintiff seeks to certify this case as a class action. Class Mot. at 1. Specifically, the plaintiff "moves for certification of a class defined as ... all natural persons ... in the United States ... three ... years

prior to the commencement of this action[ ] and/or ... were solicited by the [d]efendants for debt[-]settlement services."[6] Id. at 5. But this motion is untimely.

■ Local Civil Rule 23.1(b) provides: "Within [ninety] days after the filing of a complaint in a case sought to be maintained as a class action, ... the plaintiff shall move for a certification under Rule 23(c)(1) ...." That rule "ha[s] been strictly applied in [the District of Columbia] Circuit." Howard v. Gutierrez, 474 F.Supp.2d 41, 53 (D.D.C. 2007). The Circuit has held that "strict enforcement" of the [ninety]-day limit "implements the policy of Rule 23(c)(1) of the Federal Rules of Civil Procedure, which states that the status of class actions should be determined quickly." Black Panther Party v. Smith, 661 F.2d 1243, 1279 (D.C. Cir. 1981), vacated by mem. on other grounds sub nom. Moore v. Black Panther Party, 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982). The ninety-day deadline is measured from the filing of the first complaint alleging a class action—not from the subsequent filing of an amended complaint. Howard, 474 F.Supp.2d at 54–55.

Here, the plaintiff filed his complaint on March 8, 2014, Compl. at 18, but did not seek class certification until December 30, 2014, Class Mot. at 1. Thus, the plaintiff filed his motion well after the ninety days permitted by Local Civil Rule 23.1(b). And the plaintiff has made no showing that the delay resulted from excusable neglect. See, e.g., Little v. Wash. Metro. Area Transit Auth., 100 F.Supp.3d 1, 6 (D.D.C. 2015) ("A district court may forgive a party's failure to file a timely certification motion if that party makes a showing of excusable neglect." (citing Fed. R. Civ. P. 6(b)(1)(B); Howard, 474 F.Supp.2d at 55–56)). Accordingly, the motion will be denied.[7]

## V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Verified Motion of Defendant Bruce Dwain Atherton to Dismiss for Lack of [Personal] Jurisdiction is **GRANTED**. It is further

**ORDERED** that the plaintiff's Motion for Class Certification is **DENIED**. It is further

6. The Court presumes that the plaintiff's use of "and/or" was in error and that the plaintiff intended to only use "and." The Court also notes that this definition of the purported class differs from either definition specified in the plaintiff's complaint. See Am. Compl. ¶ 34

7. The plaintiff moved for a default against defendants Gordon and National Debt Management. Application for Entry of Default ("Default Appl.") at 1. Subsequently, the Clerk of the Court ("Clerk") entered a default against these defendants. September 8, 2014 Entry of Default, ECF No. 10. The Court, therefore, anticipates that the plaintiff will file a motion for a default judgment in the near future. In light of this anticipation, the Court advises the plaintiff that he has not moved for a default as to all defendants, i.e., the Clerk has not entered a default against Debt Restructuring, Inc., and thus any motion for a default judgment against only defendants

Gordon and National Debt Management would appear to be improper. See Nelson v. Nationwide Mortg. Corp., 659 F.Supp. 611, 615 (D.D.C. 1987) ("Moreover, the Court notes that entry of a default judgment against less than all of a group of defendants allegedly jointly liable is generally inappropriate."). Notwithstanding this apparent deficiency, if the plaintiff still intends move for entry of a default judgment against only defendants Gordon and National Debt Management, he should explain why piecemeal entry of judgment is appropriate in this case.

The plaintiff also appears to have moved for a default based on the assumption that the Court certified a class action, as he requested a default of $10,000,000. See Default Appl. at 1. Consequently, any motion for a default judgment should account for the Court's refusal to certify a class in this matter.

ORDERED that the plaintiff shall appear for a status conference on a date to be determined by the Clerk of the Court so that he can advise the Court as to how he would like to proceed in this matter.

**SO ORDERED** this 29th day of June, 2015.